IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) 24-cv-05086 |
| AIDAN DUNICAN, an individual; AND ROOFTOP BY THE FIREHOUSE, INC. d/b/a WRIGLEY VIEW ROOFTOP, | ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT

Plaintiff Chicago Cubs Baseball Club, LLC, for its Complaint against Defendants Aidan Dunican and Rooftop by the Firehouse, Inc. d/b/a Wrigley View Rooftop, states as follows:

## NATURE OF ACTION

1. Dunican and Wrigley View Rooftop run a business selling tickets to view Cubs games and other events that take place at Wrigley Field and, in the process, are unjustly enriching themselves at the expense of the Cubs' property rights and infringing the Cubs' intellectual property rights.

2. For 20 years, Dunican and Wrigley View Rooftop paid the Cubs for a license to sell tickets to Cubs games, other events at Wrigley Field, and to use the Cubs' intellectual property. That license expired, and they no longer have a license. Yet Dunican and Wrigley View Rooftop continue to advertise and sell tickets to the 2024 Cubs season. They intentionally advertise that Wrigley View Rooftop is an "Official Cubs Partner" even though they know this is false. And they promote the intentionally false statement that Wrigley View Rooftop is "officially endorsed by the Chicago Cubs."

3. Dunican and Wrigley View Rooftop's conduct is plainly unlawful. The Cubs have an undisputed property right to their games. Every other rooftop has a license from the Cubs that allows the sale of tickets to watch Cubs games. Every entity that uses the Cubs' intellectual property does so with a license from the Cubs. In sharp contrast to everyone else, Dunican and Wrigley View Rooftop are using the Cubs' product without a license. Defendants are liable to the Cubs for misappropriation, unjust enrichment, and unfair competition.

## PARTIES

4. Plaintiff Chicago Cubs Baseball Club, LLC, is a Delaware limited liability company. The Cubs play their home Major League Baseball games live at Wrigley Field in Chicago.

5. Defendant Rooftop by the Firehouse, Inc. d/b/a Wrigley View Rooftop is an Illinois corporation. Wrigley View Rooftop, without a license from the Cubs, is in the business of selling tickets to view Cubs games and other events that take place in Wrigley Field. Wrigley View Rooftop's facilities are located at 1050 W. Waveland Avenue in Chicago.

6. Defendant Aidan Dunican is an individual who resides in Illinois. Dunican is the founder, president, secretary, and director of Wrigley View Rooftop.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331, 1338 and 15 U.S.C. § 1121 in that this case arises under the Lanham Act, 15 U.S.C. §§ 1051, *et seq*. This Court also has supplemental jurisdiction under 28 U.S.C. § 1367(a) over the Cubs' related state and common law claims.

8. Venue is proper under 28 U.S.C. § 1391(b)(1) because both Defendants are subject to personal jurisdiction in this District. Additionally, venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in

this District. Further, venue is proper in this District under 28 U.S.C. § 1400(a) because Defendants may be found in this District.

## FACTUAL BACKGROUND

### A. Chicago Cubs Baseball

9. Plaintiff Chicago Cubs Baseball Club, LLC, owns and operates the Chicago Cubs. The Cubs play their home Major League baseball games at Wrigley Field, which the Cubs operate. Both the Chicago Cubs and Wrigley Field have been part of the fabric of Chicago for more than a century. The Cubs have been in Chicago since 1876, gone by the Cubs name since 1903, and played their games at Wrigley Field since 1916.

10. The Cubs invest heavily in the team, the organization, and Wrigley Field. The costs of fielding a Major League Baseball team are enormous—and have skyrocketed over the last 20 years. The Cubs spend more than a hundred million dollars each year to employ players who compete in the Major Leagues, in addition to tens of millions dollars on coaches, front office personnel, scouts, staff, infrastructure, and technology to support the Major League team.

11. Wrigley Field is costly to maintain, too. Wrigley Field's age and history are a large part of what makes it—and attending Cubs games—so special. But that age and history mean the Cubs must spend significant sums of money to update and maintain the stadium. Each year, the Cubs spend millions updating and maintaining Wrigley Field to ensure they are able to provide fans the best experience possible at Cubs games.

12. In 2014, the Cubs launched the 1060 Project, a years-long restoration process aimed at preserving Wrigley Field's historic charm while updating amenities to improve the fan experience. The 1060 Project was privately funded and cost nearly three-quarters of a billion dollars to complete. The 1060 Project, with its structural improvements, enhanced accessibility, premium seating, premier clubs, new (and improved) concessions and restrooms, new scoreboards,

3

as well as improved player facilities represented the greatest investment in Wrigley Field since its construction in 1914.

13. The Cubs recoup their investment in the organization and Wrigley Field in part by selling tickets to Cubs games at Wrigley Field. The Cubs provide a variety of seats from which to view games at Wrigley Field, including bleachers, box seats, lower and upper grandstand seats, and suites and premium spaces. The Cubs sell tickets directly to individual fans, companies, and groups. Once at games, fans can watch the game and buy food, drink, and Cubs memorabilia at concession stands and stores throughout the park. To enhance the live-game experience, the Cubs also show broadcasts of the game at points throughout the concourse at Wrigley Field to ensure fans have a view of the action, at all times—whether in their seats, going to the concession stand, or simply stretching their legs and walking Wrigley Field's concourse.

14. The Cubs sell the experience of viewing live Cubs baseball as it happens. Through the Cubs' consistent investment in the team, the Cubs' organization, Wrigley Field, and related marketing efforts, the Cubs have generated enormous goodwill and a dedicated following for Cubs games at Wrigley Field. Each year, millions of fans pay to watch Cubs games at Wrigley Field.

15. The Cubs have a valuable property right in and to the live performance of Major League Baseball at Wrigley Field, which they capitalize on through ticket, concession, and memorabilia sales.

16. Part of the Cubs' property interest in the Cubs is its distinctive tradenames, trademarks, and logo: "CHICAGO CUBS" (U.S. Registration 1548675), the Cubs logo (U.S. Registration 869838), and "CUBS" (U.S. Registration 3231136), (the "Cubs' Marks") to name just a few. When fans see the distinctive Cubs' Marks, they know a product is affiliated with and backed by the Cubs. Indeed, through the Cubs' investments and activities over the years, these

marks have come to be associated with the Cubs and the quality associated with the historic club. Fans value the Cubs' brand, and third parties routinely pay the Cubs to associate with the Cubs and profit from the Cubs' goodwill.

    **B.    Dunican's and Wrigley View Rooftop's Business**

17.    Aidan Dunican is the founder, president, secretary, and director of Wrigley View Rooftop. As the sole officer of Wrigley View Rooftop, Dunican has participated in and held control over the company's operations, marketing, and sales. Dunican profits from Wrigley View Rooftop's business, has knowledge of the property rights the Cubs hold in their live games and intellectual property, and is aware of the value that Wrigley View Rooftop gains by feigning a partnership with the Cubs.

18.    Wrigley View Rooftop operates a 4,200 square foot facility that can accommodate up to 200 guests. The facility features four sections: one that it describes as a skydeck that provides a "birds-eye view of the ballpark"; bleachers that seat 85 and "offer breathtaking views of historic Wrigley Field and the iconic scoreboard"; a clubhouse with "multiple plasma TVs" and "a balcony overlooking the ballpark"; and a mezzanine with "plenty of plasma TVs to watch the game."

19.    Wrigley View Rooftop charges fans to watch Cubs games, and other events at Wrigley Field, from its rooftop. Fans cannot access the rooftop and private party facilities unless they pay. Fans can buy individual tickets or group event packages for private parties. With the purchase of a ticket, Wrigley View Rooftop's customers are allowed to watch Cubs games, or other events, as they take place in Wrigley Field.

20.    Unlike the Cubs, Defendants do not pay for the services of the Cubs' players, coaches, trainers, and staff; for a front office to run the club; for a minor league system to find and develop young players; for maintaining and modernizing the iconic Wrigley Field; for the cost of necessary player facilities; for the Cubs' television and radio broadcasting operations; for the travel

5

or any of the other costs required to play a full Major League Baseball season; or for any of the other business activities and personnel required to operate a Major League Baseball team.

21. The Cubs have a legitimate right to capitalize on their investment, unlike Dunican and Wrigley View Rooftop. Wrigley View Rooftop, under the direction of Dunican, has acted, and is acting, to intentionally misappropriate the Cubs' property. Defendants make hundreds of thousands of dollars annually, all without incurring the costs required to produce the Cubs' product.

22. For decades, Dunican and Wrigley View Rooftop have sold tickets to view Cubs games and other events taking place in Wrigley Field and have used the Cubs' intellectual property in their business. They previously paid the Cubs for a license to do so. But they no longer have a license.

23. There is no public right to a live Cubs game or its broadcast. At great expense, the Cubs control the Cubs team and Wrigley Field to create the live game Dunican and Wrigley View Rooftop seek to profit from. Yet instead of paying for the right to profit from the Cubs' property rights, Dunican and Wrigley View Rooftop seek to take and sell the Cubs' property for their sole unjust economic gain, without a license from the Cubs.

24. The Cubs expressly told Defendants that they have no right to sell tickets to view Cubs games for the 2024 season or use the Cubs' intellectual property.

25. But that hasn't stopped Defendants from advertising and selling tickets for the 2024 Major League Baseball season. Wrigley View Rooftop's website is active. Wrigley View Rooftop advertises the 2024 Cubs' schedule. Wrigley View Rooftop gives fans ways to buy individual and group tickets to Cubs games for the 2024 season. Wrigley View Rooftop has a 2024 customer

6

contract, which provides that, if its rooftop's "line of sight ... into Wrigley Field [is] affected," customers can get a refund.

26. And Defendants have in fact sold tickets to watch Cubs games for the 2024 Major League Baseball season. Since the start of the 2024 season, Defendants have had fans on their rooftop during Cubs games. Despite repeated admonitions from the Cubs, Defendants continue to sell tickets and host fans on their rooftop during Cubs games. Indeed, for several games, the Wrigley View Rooftop notes that they have "sold out" all available space.

27. Nor will Defendants stop. Wrigley View Rooftop's *sole* business is selling tickets to watch Cubs games and other events that take place in Wrigley Field. Wrigley View Rooftop operates only when there is an event taking place in Wrigley Field. At all other times, the business is closed. In recent discussions, Defendants refused to stop selling tickets—even without a license. Defendants will thus continue to sell tickets to Cubs games in 2024 without a license.

28. Dunican and Wrigley View Rooftop have refused to enter a license with the Cubs—but continue to take full advantage of a non-existent relationship and association with the Cubs. Their website uses the Cubs' Marks, including the distinctive logo, and they advertise that Wrigley View Rooftop is an "Official Cubs Partner[]" and is "officially endorsed by the Chicago Cubs." That is false: the Cubs are not partners with and do not endorse Defendants. The unauthorized and infringing use of the Cubs' Marks, and the blatant, intentional misrepresentation regarding the Cubs' alleged sponsorship of Defendants is apparent on Wrigley View Rooftop's website and advertising brochure.



29.     Defendants continue their pattern of falsely portraying that Wrigley View Rooftop is affiliated with the Cubs on their social media. Wrigley View Rooftop boasts it is "Chicago's Premier Cubs Rooftop Venue" and "an official rooftop partner of the legendary Chicago Cubs" on Facebook; an "Official Partner of the Cubs" on LinkedIn; and an "official Chicago Cubs rooftop partner" on Google Reviews. These statements are false, and Defendants know it.

30.     Defendants market their services and commercial activities by associating themselves with the Cubs and Wrigley Field, trading on the goodwill associated with the Cubs' Marks, in particular the Chicago Cubs name, the Cubs' logo, Cubs' players, Wrigley Field, and other words, symbols, and pictures associated with the Cubs. Wrigley View Rooftop also touts and depicts the view of "Chicago Cubs baseball" and Wrigley Field from its facilities.

31.     Wrigley View Rooftop's use of the Cubs' Marks in its marketing, as directed by Dunican, has and is likely to continue to cause consumers to be confused as to the source of Defendants' services and to mistakenly believe that there is an affiliation, association or connection between Defendants and the Cubs—one that does not exist—and that the Cubs approve of or sponsor Defendants' rooftop business.

### C. Defendants' Unlawful Conduct Has Injured the Cubs

32. The Cubs sell tickets for bleachers, box seats, lower and upper grandstand seats, skyboxes, and premium seating in Wrigley Field.

33. Dunican and Wrigley View Rooftop are unjustly enriching themselves at the Cubs' expense and misappropriating the Cubs property. Like the Cubs, Defendants advertise and sell luxury suites and other seating to Cubs games. Like the Cubs, Defendants advertise and sell bleacher seating to see Cubs games. And, like the Cubs, Defendants market Wrigley View Rooftop by featuring words, pictures, logos, trademarks, and other symbols of the Cubs, Cubs baseball, and Wrigley Field. Dunican and Wrigley View Rooftop thus advance their business interests by associating Wrigley View Rooftop with the Cubs and infringing the Cubs' intellectual property rights.

34. A major part—if not all—of the revenue Defendants earn from their rooftop business is revenue that would otherwise flow to the Cubs. Where admission to Defendants' facility is available, fans may go there instead of into the ballpark.

35. Revenues from the sale of tickets to the fans who come to Wrigley Field for live baseball are a major source of revenue for the Cubs. The Cubs earn additional revenue by selling food, drink, and other concessions to those fans. Defendants' misappropriation of the Cubs' property rights in Cubs games diverts gate, concession and other receipts to Defendants. The revenues from Cubs game packages sold by Defendants are revenues that are lost to the Cubs. Defendants' efforts to associate Wrigley View Rooftop with the Cubs aids them in their unlawful efforts to unjustly enrich themselves and misappropriate the Cubs' property.

36. Dunican and Wrigley View Rooftop's unlawful use of the Cubs' trademarks and tradenames similarly harms the Cubs. The Cubs have spent billions on the team, organization, and Wrigley Field. Fans associate the Cubs' trademarks, tradenames, and logos with the Cubs and the

history and reputation the Cubs work hard to cultivate. Defendants' use of those marks, for their own business and without a license, harms that reputation.

37. Dunican and Wrigley View Rooftop's conduct also threatens the Cubs' reputation and brand loyalty by misleading fans to believe their experience at Wrigley View Rooftop is representative of the experience they would have at Wrigley Field. Their use of the Cubs' Marks and their false claim that Wrigley View Rooftop is endorsed by and associated with the Cubs deceives customers.

38. Wrigley View Rooftop advertises using the Cubs' Marks, and falsely claims to be an official partner of, and officially endorsed by, the Cubs. This isn't true. But as long as Dunican and Wrigley View Rooftop continue to advertise the nonexistent partnership, fans have no reason to assume anything but that the Cubs endorse Wrigley View Rooftop.

## COUNT I
### Misappropriation
### (Against All Defendants)

39. The Cubs repeat and reallege Paragraphs 1 through 38 of this Complaint as if fully set forth herein.

40. The Cubs spend millions of dollars annually to produce baseball games and other events at Wrigley Field, including money spent on, among other things, the salaries of the Cubs' players, the operations and maintenance of Wrigley Field, and the presentation of games and events live at the ballpark. The Cubs have a property right in and to the performance of the Major League Baseball games played by the Cubs at Wrigley Field.

41. Wrigley View Rooftop, at Dunican's direction, sells performances of Cubs baseball and other events at Wrigley Field to the public. Defendants do not pay any of the costs incurred by the Cubs to field a team and play baseball games at Wrigley Field, nor do they have any license with the Cubs, let alone a license granting the right to sell tickets to Cubs games or other events.

Instead, Defendants benefit from the Cubs' investments and profit from the use of the Cubs' property rights in Cubs games at the Cubs' expense.

42. Defendants have sold tickets to Cubs games for the 2024 season, even though they don't have a license or other right to do so. Further, Defendants' sole business is to sell tickets to view Cubs games and other events taking place in Wrigley Field. Defendants have made plain their intention to continue to sell tickets for the 2024 Major League season, even without a license.

43. Defendants' misappropriation of the Cubs' property has proximately caused, and continues to cause, immediate and irreparable harm to the Cubs, including to their goodwill and commercial reputation, in addition to causing lost sales and profits and other economic injuries.

44. The Cubs seek an order recognizing the Cubs' exclusive property rights in Cubs games and prohibiting Defendants from selling tickets to view Cubs games played in Wrigley Field without a license. The Cubs also seek damages caused by Defendants' unlawful advertisement and sale of tickets to Cubs games for the 2024 Major League Baseball season.

**COUNT II**
**Unjust Enrichment**
**(Against All Defendants)**

45. The Cubs repeat and reallege Paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Defendants operate an extremely profitable business because they take the Cubs' property and divert the Cubs' revenues to themselves. Defendants have sold tickets to Cubs games for the 2024 season without compensating the Cubs for any of the costs required to, among other things, field a team and operate a ballpark in order to participate in Major League Baseball.

47. Wrigley View Rooftop, at Dunican's direction, will continue its decades-long business of selling tickets to view Cubs games and other events taking place in Wrigley Field.

11

48. By unlawfully taking the Cubs' property and using it as the essential part of their business—which consists of selling tickets to Cubs games and other events at Wrigley Field—Defendants obtain a windfall and are unjustly enriched and will continue to be unjustly enriched.

49. The Cubs have been injured as a result of Defendants' unlawful and inequitable conduct.

## COUNT III
**Federal Trademark Infringement (15 U.S.C. § 1114(1))**
**(Against All Defendants)**

50. The Cubs repeat and reallege Paragraphs 1 through 49 of this Complaint as if fully set forth herein.

51. The Cubs' Marks, including "CHICAGO CUBS" (U.S. Registration 1548675), the Cubs logo (U.S. Registration 869838), and "CUBS" (U.S. Registration 3231136) are valid, federally registered trademarks that are used in interstate commerce.

52. The Cubs use, and have the exclusive right to use, the Cubs' Marks in advertising, promoting, and selling tickets, merchandise, and memorabilia in interstate commerce.

53. The Cubs' Marks are inherently distinctive, and consumers associate those Marks with the Cubs.

54. Defendants have used the Cubs' Marks in connection with the sale of goods and services in interstate commerce by using the names and logos to advertise, promote, and offer for sale tickets to view events and games in Wrigley Field from Wrigley View Rooftop's rooftop. This use has taken place at Dunican's direction through Wrigley View Rooftop's advertising, informational brochure, website, and social media.

55. Defendants' use of the Cubs' Marks in their marketing and other materials is likely to cause confusion as to the affiliation, connection or association of Defendants with the Cubs and the Cubs' approval or sponsorship of Defendants' business activities. Defendants' conduct has

caused, and is likely to cause, consumers to believe, contrary to fact, that Wrigley View Rooftop is endorsed or sponsored by the Cubs.

56. Defendants' activities adversely affect the Cubs' ticket sales and business in interstate commerce.

57. Defendants have engaged in use of the Cubs' Marks with complete knowledge of the Cubs' rights in their marks and with the willful intent to cause confusion among consumers and capitalize on the Cubs' goodwill.

58. Defendants' infringement has proximately caused, and continues to cause, immediate and irreparable harm to the Cubs' goodwill and commercial reputation in addition to causing lost sales and profits and other economic injuries.

## COUNT IV
### Federal Unfair Competition (15 U.S.C. § 1125(a)(1)(A))
### (Against All Defendants)

59. The Cubs repeat and reallege Paragraphs 1 through 58 of this Complaint as if fully set forth herein.

60. The Cubs' Marks, including "CHICAGO CUBS" (U.S. Registration 1548675), the Cubs logo (U.S. Registration 869838), and "CUBS" (U.S. Registration 3231136) are valid, federally registered trademarks that are used in interstate commerce.

61. The Cubs use, and have the exclusive right to use, the Cubs' Marks in advertising, promoting, and selling tickets, merchandise, and memorabilia in interstate commerce.

62. The Cubs' Marks are inherently distinctive, and consumers associate those Marks with the Cubs.

63. Defendants have used the Cubs' Marks in connection with the sale of goods and services in interstate commerce by using the names and logos to advertise, promote, and offer for sale tickets to view events and games in Wrigley Field from Wrigley View Rooftop's rooftop.

13

This use has taken place at Dunican's direction through Wrigley View Rooftop's advertising, informational brochure, website, and social media.

64. Defendants' use of the Cubs' Marks in their marketing and other materials is likely to cause confusion as to the affiliation, connection or association of Defendants with the Cubs and the Cubs' approval or sponsorship of Defendants' business activities. Defendants' conduct is likely to cause consumers to believe, contrary to fact, that Wrigley View Rooftop is endorsed or sponsored by the Cubs.

65. Defendants' activities adversely affect the Cubs' ticket sales and business in interstate commerce.

66. Defendants have engaged in use of the Cubs' Marks with complete knowledge of the Cubs' rights in their marks and with the willful intent to cause confusion among consumers and capitalize on the Cubs' goodwill.

67. Defendants' infringement has proximately caused, and continues to cause, immediate and irreparable harm to the Cubs' goodwill and commercial reputation in addition to causing lost sales and profits and other economic injuries.

## COUNT V
### False Advertising (15 U.S.C. § 1125(a)(1)(B))
### (Against All Defendants)

68. The Cubs repeat and reallege Paragraphs 1 through 67 of this Complaint as if fully set forth herein.

69. Defendants have used the Cubs' Marks in connection with the sale of goods and services in interstate commerce by using the Cubs' Marks to advertise, promote, and offer for sale tickets to access Wrigley View Rooftop's rooftop view of Cubs games and other events at Wrigley Field.

70. Defendants have expressly communicated to consumers that their services (*i.e.*, their rooftop Cubs game experience) are sponsored and endorsed by the Cubs. For example, they falsely advertise that Wrigley View Rooftop is an "Official Cubs Partner[]," is "officially endorsed by the Chicago Cubs," is "Chicago's Premier Cubs Rooftop Venue" and "an official rooftop partner of the legendary Chicago Cubs," is "Official Partner of the Cubs," and is an "official Chicago Cubs rooftop partner." Those statements are false.

71. Moreover, by sheer use of the Cubs' Marks alone, Defendants are necessarily suggesting that their services are sponsored by, or affiliated or associated with, the Cubs when that is false. Defendants' false statements regarding their relationship with the Cubs and their use of the Cubs' Marks in their advertising and promotional materials misrepresent the nature, characteristics, qualities of Defendants' goods and services. This use has taken place at Dunican's direction through Wrigley View Rooftop's advertising, informational brochure, website, and social media.

72. Defendants' use of the Cubs Marks deceives consumers as to the nature of their goods and services.

73. Defendants' use of the Cubs' Marks and express false statements regarding sponsorship and endorsement are material to consumers and are likely to influence purchasing decisions.

74. Defendants' activities adversely affect the Cubs' ticket sales and business in interstate commerce.

75. Defendants have used the Cubs' Marks and falsely represented that they are affiliated with and endorsed by the Cubs, with complete knowledge of the Cubs' rights in their

15

marks and with the willful intent to cause confusion among consumers and capitalize on the Cubs' goodwill.

76. Defendants' false advertising proximately caused, and continues to cause, immediate and irreparable harm to the Cubs' goodwill and commercial reputation in addition to causing lost sales and profits and other economic injuries.

## COUNT VI
### Illinois Uniform Deceptive Trade Practices Act (815 ILCS § 510/2)
### (Against All Defendants)

77. The Cubs repeat and reallege Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78. Defendants have used the Cubs' Marks in connection with the sale of goods and services in the state of Illinois by using the names and logos to advertise, promote, and offer for sale tickets to view games and events at Wrigley Field from Wrigley View Rooftop's rooftop. Defendants have also falsely claimed endorsement by and affiliation with the Cubs. This use has taken place at Dunican's direction through Wrigley View Rooftop's advertising, informational brochure, website, and social media.

79. Defendants' false statements as described above represent deceptive trade practices in that, in the course of their business, Defendants caused likelihood of confusion or misunderstanding as to the sponsorship and approval of Wrigley View Rooftop's goods or services, with the intent to cause such confusion and misunderstanding, in violation of the Illinois Uniform Deceptive Trade Practices Act.

80. Defendants willfully engaged in the deceptive trade practices described above.

81. Defendants' deceptive trade practices proximately caused, and continues to cause, immediate and irreparable harm to the Cubs' goodwill and commercial reputation in addition to causing lost sales and profits and other economic injuries.

## COUNT VII
### Illinois Common Law Unfair Competition
### (Against All Defendants)

82. The Cubs repeat and reallege Paragraphs 1 through 81 of this Complaint as if fully set forth herein.

83. Wrigley View Rooftop's conduct has taken place at Dunican's direction. Defendants have sold tickets to view Cubs games in the 2024 Major League season, and they intend to continue selling tickets to Cubs games and events without a license. Defendants thus profit, at the Cubs' expense, by selling tickets to Cubs games and other events at Wrigley Field without bearing any of the cost of running the Cubs' organization or Wrigley Field.

84. Defendants have used the Cubs' Marks to advertise, promote, and offer for sale tickets to watch Cubs games and other events from Wrigley View Rooftop's rooftop. Defendants have also falsely claimed endorsement by and affiliation with the Cubs. This use has taken place at Dunican's direction through Wrigley View Rooftop's advertising, informational brochure, website, and social media.

85. Defendants' conduct as described above represents unfair competition because Defendants (1) profit from the use of the Cubs' property rights in Cubs games at the Cubs' expense, and (2) caused a likelihood of confusion or misunderstanding as to the sponsorship and approval of Wrigley View Rooftop's goods or services, with the intent to cause such confusion and misunderstanding.

86. Defendants willfully engaged in the unfairly competitive practices described above.

87. Defendants' unfairly competitive behavior proximately caused, and continue to cause, immediate and irreparable harm to the Cubs' goodwill and commercial reputation in addition to causing lost sales and profits and other economic injuries.

17

**PRAYER FOR RELIEF**

WHEREFORE, the Cubs pray for:

    (i)    compensatory damages;

    (ii)    disgorgement to Plaintiff of Defendants' improper and unlawful profits;

    (iii)    statutory damages and penalties;

    (iv)    treble damages pursuant to 15 U.S.C. § 1117(a);

    (v)    a finding that Defendants' conduct is exceptional under 15 U.S.C. § 1117(a);

    (vi)    a permanent injunction barring Defendants from (a) selling, or in any way offering for value, admissions to view live baseball games or events played at Wrigley Field; (b) infringing Plaintiff's trademarks, tradenames, logos, copyrights, and other intellectual property; and (c) engaging in any commercial advertising, promotion or marketing likely to cause confusion, mistake or deception concerning Defendants' connection or affiliation with the Cubs or the Cubs' sponsorship or approval of Defendants' businesses;

    (vii)    an award of punitive damages;

    (viii)    an award granting Plaintiff its costs and reasonable attorneys' fees; and

    (ix)    such other relief as the Court may award.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED: June 18, 2024    Respectfully submitted,

/s/ *Timothy W. Knapp*
Timothy W. Knapp, P.C.
Kent J. Hayden
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Attorneys for Plaintiff*