**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO CUBS BASEBALL CLUB, LLC,<br>Plaintiff,<br>v.<br>AIDAN DUNICAN, an individual; AND ROOFTOP BY THE FIREHOUSE, INC. d/b/a WRIGLEY VIEW ROOFTOP,<br>Defendants. | Case No. 24-cv-05086<br>Honorable Judge Sharon Johnson Coleman |

## REPLY IN SUPPORT OF MOTION TO DISMISS

Now Come Defendants, Aidan Dunican and Rooftop by the Firehouse, Inc. d/b/a Wrigley View Rooftop (collectively, "Wrigley View"), and for their reply in support of their motion to dismiss state as follows:

There can be no clearer evidence than the Settlement Agreement itself—a settlement contract *to end the litigation*—that the parties intended an arbitrator, not the Court, to decide questions of arbitrability. But regardless, the Court can and would reach the same conclusion an arbitrator would: *Rooftops II* is arbitrable under the Settlement Agreement, and does not belong in federal court again. The Arbitration Clause survives expiration of the Term of the Royalty Agreement for multiple reasons, not least of which is that each surviving section requires the Arbitration Clause as a dispute resolution mechanism. The parties litigated identical claims concerning identical property rights, identical parties, and identical transactions to those in *Rooftops II*, which was *dismissed with prejudice*, and the Court should do the same now.

To be clear, Wrigley View invokes a Settlement Agreement which ended prior, identical litigation. Wrigley View does not seek *to compel arbitration*; it seeks *dismissal of Rooftops II with prejudice* because the Cubs already litigated and settled the claims advanced here when they signed the Settlement Agreement. To the extent that the Settlement Agreement reserved either party's

right "to assert a license … is [or is not] required"—which is what the Cubs do in this lawsuit—that right must be exercised through arbitration. As such, the Court should dismiss this lawsuit with prejudice, just as it was 20 years ago.

**STANDARD**

Wrigley View recognizes a recent opinion suggesting the present motion was misstyled as a venue challenge, and ought to have been brought under common law principles such as *forum non conveniens*. *Rodgers-Rouzier v. Am. Queen Steamboat Operating Co., LLC*, 104 F.4th 978, 984 (7th Cir. 2024) (*citing Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013)) ("Rule [12(b)(3)] is no longer a permissible means of enforcing arbitration agreements" and instead "[c]ommon-law doctrines like *forum non conveniens* are the preferred mechanism by which to dismiss a suit brought in the wrong forum, if it cannot be transferred to the right one.") *Rodgers-Rouzier*, 104 F.4th at 984. To the extent *Rodgers-Rouzier* is binding, Wrigley View requests the Court to construe the motion as such. Nevertheless, the invocation of an improper procedural mechanism does not alter the Court's inherent power to determine the substantive issues—primarily, whether the claims here are subject to the Cubs' Arbitration Clause in the Settlement Agreement. *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022) ("A court must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate.") Moreover, this distinction only serves Wrigley View, as they need not show this venue is improper, but only that convenience and effectuating justice are best served by dismissal. *See, e.g.*, *IAC/InterActiveCorp v. Roston*, No. 20-CV-3440, 2021 WL 2986300, at *2 (N.D. Ill. July 15, 2021), *aff'd*, 44 F.4th 635 (7th Cir. 2022) (J. Coleman) ("[*f*]*orum non conveniens* allows courts to dismiss suits they have jurisdiction over in favor of the convenience of the parties and to effectuate justice.") Here, the Major League Baseball team cannot reasonably argue that litigation with the

local business is more convenient than arbitrating or that it would better effectuate justice. Also, the party opposing arbitration "bears the burden of demonstrating the arbitration agreement is unenforceable and the claims are unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91–92 (2000). The Major League Baseball team has not done that.

## ARGUMENT

### I. The Parties Clearly and Unmistakably Delegated Arbitrability to the Arbitrator.

When the parties settled *Rooftops I* and incorporated the AAA Rules into the Settlement Agreement, they demonstrated a clear and unmistakable intent to leave this gateway question of arbitrability to the arbitrator, and not the Court. The Cubs argue that inclusion of the qualifier "(or such other organization as the parties agree upon)" following the incorporation of the AAA Rules means the Settlement Agreement does not mandate those rules, and therefore does not constitute clear and unmistakable intent to arbitrate arbitrability. Dkt. 24 at 14–15 (citing *Think Tank, Inc. v. ITegrity, Inc.*, 2023 WL 3955346 (D. Md. June 9, 2023)). While that reasoning might hold-up in the District of Maryland, *this Court* understands "that the parties' *adoption of the AAA rules* provides clear and unmistakable evidence that the parties agreed for an arbitrator to decide whether claims are arbitrable." *Hammond, Kennedy, Whitney & Co., Inc. v. Freudenberg N. Am. Ltd. P'ship*, No. 22-CV-04394, 2023 WL 2525026, at *2 (N.D. Ill. Mar. 15, 2023) (J. Coleman) (emphasis added). With or without the qualifier, the parties explicitly "adopted" the AAA rules, if not required them. But regardless, this conclusion—that the parties demonstrated a clear and unmistakable intent to leave arbitrability to the arbitrator—is clearly and unmistakably obvious, considering the parties intended the Settlement Agreement, like any other settlement agreement, *to end litigation*. Absurdity and the Cubs would have it that the parties, in settling litigation, intended to litigate whether their future disputes where arbitrable, before then arbitrating those disputes, while at the same time leaving litigation of the same issues on the table. That was not the

agreement. Nor is that how arbitration works. Clearly and unmistakably the intent was t*o end litigation*. And, regardless, even if left to the Court to determine arbitrability, "any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration." *F.E. Moran, Inc. v. Johnson Controls, Inc.*, No. 22-CV-06421, 2024 WL 3426886, at *5 (N.D. Ill. July 16, 2024) (J. Coleman). While there is no doubt the Cubs agreed to submit the question of arbitrability to the arbitrator, the Court can observe this just as easily.

## II. Neither the Cubs' Settlement, Nor the Cubs' Arbitration Clause Expired.

The Cubs protest that the expiration of the Term of the Royalty Agreement and the absence of their Arbitration Clause in the Survival Clause shows *Rooftops II* is not covered under their Arbitration Clause. The Major League Baseball team posits that the expiration of the Term of their Royalty Clause in the Settlement Agreement allows them to "reinstate their lawsuit"—in their words—"that is precisely the agreement the parties signed." *Id.* Of course, the Settlement Agreement says nothing of the sort. Telling is the Cubs refusal to call the Settlement Agreement what it is—instead calling it "an agreement." Dkt 24. They want to hide the ball that *Rooftops II* is an identical lawsuit alleging identical causes over identical issues involving identical parties and identical transactions as *Rooftops I*—the case from which they dismissed Wrigley View *with prejudice 20 years ago*. Ex. 2 § 2. Wrigley View does not dispute the Settlement Agreement contains a "Term" which has expired. However, the Cubs' Settlement Agreement has a Survival Clause. Each of the section that survive requires a dispute resolution mechanism. Beyond dispute, *today*, the Major League Baseball team can invoke the Arbitration Clause. And yet, the owners of the so-called "Friendly Confines" insist on dragging their neighbor into federal court. In any case, the judgment that resulted of the Settlement Agreement does not expire. The Cubs knew this and drafted their Arbitration Agreement with this in mind, and now that it does not serve their purpose of intimidating their neighbors, they want out.

Contrary to the Cubs' representation, the parties never "specifically excluded" the Arbitration Agreement—or anything for that matter—from the Survival Clause. To the contrary, it specifically *included* a catch-all for "any other provision for which *survival is equitable*." Ex. 2 § 2 (emphasis added). True, arbitration is a matter of contract, but the survival of the parties' bargained-for dispute resolution mechanism is equitable. Forcing Wrigley View to begin anew litigation it settled 20 years ago is not. Most importantly, each section for which the Settlement Agreement provides survival past the expiration of the Term of the Royalty Clause—specifically, § 3.4 (Audit); §§ 4.4, 5 (transferability); § 10 (indemnification); § 11 (releases)—necessarily requires a dispute resolution mechanism because the envince post-termination disputes. For example, the auditing section subjects Wrigley View to a potential audit and related fines for 18 months post expiration. Notably, that term is still active as of this writing, and the Cubs, today, can demand an audit from Wrigley View and can invoke their Arbitration Clause to resolve any dispute over that audit. In the Cubs' reading, the parties could seek post-termination arbitration for these sections while at the same time renewing the 20+ year-old litigation that the Settlement Agreement was intended to end. The "auditing arbitration action" and the current litigation would be claiming the same rights and seeking the same relief—namely, royalties for the Cubs' claimed right to Wrigley View's view. The Court should "be hard-pressed to conclude that rational people seeking rational ends would have agreed to such a result." *Neubauer-Perkins, Inc. v. Jason Walters & Assocs., LLC*, No. 1:19-CV-0821, 2020 WL 606762, at *2 (N.D. Ill. Feb. 7, 2020) (J. Coleman) (noting absurdity of proposition that parties intended duplicate efforts and expenditures in litigating the same claims—centered around a single set of operative facts—at the same time in two separate venues.) Then again, the Court should not assume rationality from the Cubs, as their interpretation of the Settlement Agreement leads to absurd results and is contrary to the express purpose and word of the Settlement Agreement.

What matters beyond the expiration of the Term of the Cubs' Royalty Clause and the Survival Clause—and what the Cubs ignore—is the finality of judgment in *Rooftops I* for which the Cubs explicitly contracted, and which is the primary purpose of the Settlement Agreement. *Id.* at 1 ("the parties wish to avoid the expense and uncertainty of a trial; and [] to compromise and settle [*Rooftops I*,] and to resolve all the claims that were or could have been brought in [*Rooftops I*] without any admission of fault or determination as to the merits...."). In this regard, the Cubs reveal their true intention—extorting Royalty Fees from the local business—in arguing "the very purpose [of the Settlement Contract is] paying royalties in exchange for licensing rights." Dkt. 24 at 6. The "very purpose" of the Settlement Agreement—like any other settlement agreement—is to settle litigation, and is noted in the recitals, not in Section 3.1 pertaining to royalties. No doubt royalties were something the Cubs bargained for in settling *Rooftops I*, but the Cubs' cut was obviously not the "very purpose" of the Settlement Agreement. Moreover, royalties are plainly part of "asserting a license," and so the Cubs can obtain royalties through arbitration. Instead, the Major League Baseball team prefers litigation so they can leverage their "billions" to get a cut of the local business' rooftop. (Comp. ¶¶ 12, 18, 36.) This distinction is important because, unfortunately for the Cubs, the parties cannot simply contract out of the finality of judgments. *See* Rule 60(b) of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 60(b). Consequently, the finality of *Rooftops I* is problematic for the Cubs as it has preclusive effect on *Rooftops II*. *See, e.g.*, *McCurry v. Mars, Inc.*, No. 19-CV-04067, 2020 WL 6075872, at *4 (N.D. Ill. Oct. 15, 2020) (J. Coleman) (noting "the elements of claim preclusion are (1) an identity of the causes of actions; (2) an identity of the parties or their privies; and (3) a final judgment on the merits" and "issue preclusion, unlike claim preclusion, prohibits re-litigation of a resolved issue of law or fact.") The inclusion in the Settlement Agreement of the Reservation shows the Cubs' evinced this problem,

considered it, and reserved only the "ability to assert a license or other permission from the Cubs is [or is not] required for the right to sell admission to view Games from the Rooftops."

Notably, not one of the cases the Cubs cited involved an arbitration agreement in a settlement agreement. In fact, the situation is rather unusual, as presumably a settlement agreement, by its nature, would not need a dispute resolution mechanism. *See, e.g.*, *Kay v. Bd. of Educ. of City of Chicago*, 547 F.3d 736, 738 (7th Cir. 2008) ("a settlement contract is distinct from the collective bargaining agreement and not covered by its arbitration clause, which deals with claims arising under the CBA.") Any ambiguity left by the curious drafting choice of incorporating the temporary Royalty Clause into permanent settlement of the claims of *Rooftops I* must be resolved in favor of arbitration. *F.E. Moran, Inc*., 2024 WL 3426886, at *5.a

The Cubs are quick to point to the Reservation to argue that under the Settlement Agreement they can bring *Rooftops II* without prejudice. But the plain, ordinary, and popular meaning of "assert a license" is not "reinstating" or "filing another" lawsuit, nor does it even suggest the possibility of litigation. The Court also must read it in the context of a settlement agreement with a stated purpose to end the litigation between the parties "and to resolve all the claims that were or could have been brought." *Thompson v. Gordon*, 241 Ill. 2d 428, 441, 948 N.E.2d 39, 47 (Ill. 2011) ("A contract must be construed as a whole, viewing each provision in light of the other provisions."). To do otherwise reaches the absurd result of a 20-year temporary settlement of litigation and violates the general rule in Illinois against claim splitting. *See, e.g.*, *Crowder v. City of Chicago*, No. 20 C 5137, 2022 WL 3684627, at *2 (N.D. Ill. Aug. 25, 2022) (J. Coleman) (noting "the rule against claim splitting prohibits a plaintiff from bringing a new case raising issues arising out of the same transaction or occurrence as an earlier case, when those issues could have been raised in the first litigation"); *see also*, *Barnes-Annabi v. Brown*, No. 15-CV-9451, 2016 WL 1623297, at *2 (N.D. Ill. Apr. 25, 2016) (J. Coleman) (noting a suit is deemed

duplicative of an earlier suit if: 1) there was a final judgment on the merits in the earlier suit; 2) there is an identity of the parties in the two suits; and 3) there is an identity of the causes of action.) By citing the Reservation contained in the Settlement Agreement, the Cubs concede that this case, *Rooftops II*, is a continuation of *Rooftops I*, the case they settled with Wrigley View 20 years ago, and in doing so, also concede that this case "arises under" the Settlement Agreement such that its subject to Arbitration Clause. Dkt. 24 at 5. They further concede the disputes herein "arose *because* the Agreement ceased to exist. Dkt. 24 at 7 (Emphasis in original).

What is clear is that by including the Reservation, the Settlement Agreement anticipated disputes arising out of the contract post-December 31, 2023. It then provided a dispute resolution mechanism with broad all-encompassing language. That mechanism incorporated the broad language of the AAA rules of Arbitration demonstrating the parties' intention for the mechanism to survive. The Cubs theorize their right to pursue this lawsuit was reserved under the Settlement Agreement while at the same time arguing this lawsuit does not arise under the Settlement Agreement. No doubt the Cubs would seek to rely on the Reservation in response to inevitable litigation over the preclusive effects of *Rooftops I* on *Rooftops II*. Such litigation would be inevitable as the Settlement Agreement required dismissal of Wrigley View's predecessor from *Rooftops I* "with prejudice." However, the parties anticipated as much and chose arbitration to resolve future attempts to "assert a license."

### III. *Rooftops II* Arises Under, Out of, and Because of the Settlement Agreement.

The Cubs misconstrue when the dispute herein arose, arguing "the Arbitration Clause cannot possibly encompass disputes that arose *after* it ceased to exist—much less disputes that arose *because of* the Agreement." Notably, the Cubs insist that the "arising under" language, as opposed to "arising out of," calls for a "more narrow" construction. Perhaps, but this dispute necessarily involves the interpretation and performance of the Settlement Agreement which settled

the litigation determining the parties' respective rights and obligations at issue in this case. *Nissan Forklift Corp. v. Zenith Fuel Sys., L.L.C.*, 2006 WL 643937, at *6 (N.D. Ill. Mar. 3, 2006). The Settlement Agreement still controls those respective rights and obligations. Indeed, this motion seeks interpretation and performance of the Settlement Agreement. Even assuming the Cubs' position that the entire agreement expired, one means of demonstrating that an arbitration agreement survives contract expiration is "where an action taken after expiration infringes a right that accrued or vested under the agreement." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190 (1991). The Cubs' insist this lawsuit only pertains to post-expiration actions, but they also admit their right to pursue their Royalties from Wrigley View accrued or vested under the Settlement Agreement. Dkt. 24 at 7 ("[*Rooftops II*] arose *because* the Agreement ceased to exist") (emphasis in original); *see also*, *id.* at 10–11 ("it is the fact that the Agreement terminated that made Defendants' conduct actionable."). Interestingly, the Cubs quote the *Sweet Dreams* observation regarding the "more difficult question [of] disputes [that] had arisen a significant time after the expiration." *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.*, 1 F.3d 639, 643 (7th Cir. 1993). Like *Sweet Dreams*, the Court has the easier question where the dispute "comes on the heels of [the Settlement Agreement]" because the Cubs filed this lawsuit only 6 months post-expiration during negotiations for a new royalty arrangement under the Settlement Agreement. In other words, there was an ongoing grievance initiated by the expiration of the Term of the Royalty Clause. Dkt. 24 at 11 ("Defendants refused the Cubs' offer to extend the Agreement for an additional term."). This entire lawsuit originates in the expiration of the Term of the Royalty Clause on December 31, 2023; not in conduct that occurred months after the fact. Moreover, since negotiations ceased and this litigation commenced, the Cubs constructed barriers obstructing Wrigley View's view of the not-so-Friendly Confines, which view the Cubs do not

own, and renders the Cub's claim regarding the view nonsensical. *Rooftops II* arises either "under," "out," or because of the Settlement Agreement.

## CONCLUSION

There is no doubt the parties agreed to submit the question of arbitrability to an arbitrator, and the court can dismiss on those grounds.[1] Nonetheless, if the Court decides the question, the answer is that the lawsuit is arbitrable. The parties agreed, when ending identical litigation 20 years ago, that they would resolve their future disputes by arbitration. The parties' Arbitration Clause survives and these claims not only arise under the Settlement Agreement, they are entirely contingent on it. Importantly, the Cubs can obtain the relief they seek through arbitration. Accordingly, Wrigley View requests the Court grant the Motion and dismiss this case with prejudice—just as it was dismissed decades ago.

Dated: October 3, 2024

Respectfully submitted,

*/s/ J. Timothy Cerney*
Attorney for Wrigley View
Carroll, Hartigan & Cerney, Ltd.
218 N. Jefferson Street - Suite 102
Chicago, IL 60661
jtc@chc-law.com
312-236-3575
Attorney No. 312516

## CERTIFICATE OF SERVICE

I, J. Timothy Cerney, an attorney, hereby certify that I caused the foregoing document to be filed with the Court's CM/ECF system, which provided electronic notice and a copy of the same to all counsel of record.

*/s/ J. Timothy Cerney*

[1] Generally, "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery, Inc.* , 516 F.3d 557, 561 (7th Cir. 2008) However, when the Court finds that a dispute is subject to arbitration, the court is not barred from dismissing the suit if there is a separate reason to dismiss, unrelated to the fact that an issue in the case is subject to arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024). Here, the Court can dismiss on the alternate grounds that the claims here are precluded by the final judgment in *Rooftops II. See, § II supra.*