**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 24-cv-05086 |
| | ) | |
| v. | ) | |
| | ) | |
| AIDAN DUNICAN, an individual; AND | ) | |
| ROOFTOP BY THE FIREHOUSE, INC. d/b/a | ) | |
| WRIGLEY VIEW ROOFTOP, | ) | |
| | ) | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(C)**
**AS TO COUNTS I AND II OF PLAINTIFF'S COMPLAINT**

# Table of Contents

I.  Introduction ................................................................................................................ 1

II. The Background Facts .............................................................................................. 2

III. Rule 12(c) Provides for Judgment Against Plaintiff on Its Claims of "Misappropriation"
    and "Unjust Enrichment" ...................................................................................... 3

IV. This Court Should Render Judgement Against Plaintiff on Counts I and II ..................... 4

    A.  Defendants are entitled to judgment on the pleadings on Count One for
        misappropriation .......................................................................................... 4

        1.  Plaintiff has not identified property that has allegedly been
            misappropriated .................................................................................. 5

        2.  Plaintiff cannot preclude Defendants' enjoyment of Defendants' property 7

        3.  Plaintiff does not have a property interest in the sights and sounds it
            allows to leave the confines of Wrigley Field ........................................... 8

    B.  Defendants are entitled to judgment on Count Two for unjust enrichment.......... 10

V.  Conclusion ............................................................................................................ 14

# **Table of Authorities**

## **Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)..................................................................... 3, 4

*Bd. of Trade of City of Chicago v. Dow Jones & Co., Inc.,*
    108 Ill. App. 3d 681 (1st Dist. 1982), *aff'd,* 98 Ill. 2d 109, 456 N.E.2d 84 (1983) ........... 4, 5

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................... 3

*Birchwood Land Co. v. Krizan,*
    2015 VT 37, 198 Vt. 420, 115 A.3d 1009 (2015)......................................... 12, 13

*Capitol Records, Inc. v. Spies,*
    130 Ill. App. 2d 429 (1st Dist. 1970) ......................................................... 5

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,*
    131 Ill.2d 145 (Ill. 1989)..................................................................... 10

*Int'l News Serv. v. Associated Press,*
    248 U.S. 215 (1918)......................................................................... 4

*MetroPCS v. Devor,*
    215 F.Supp.3d 626 (N.D. Ill. 2016) ....................................................... 10

*Nat'l Football League v. Governor of State of Del.,*
    435 F.Supp. 1372 (D. Del. 1977)........................................................... 5

*Prince v. Dart,*
    2015 WL 3798435 (N.D. Ill. 2015) ....................................................... 3, 4

*Ranquist v. Donahue,*
    710 F.Supp. 1160 (N.D.Ill.1989) ......................................................... 13

*Sears, Roebuck & Co. v. Stiffel Co.,*
    376 U.S. 225 (1964)......................................................................... 5

*United States v. Causby,*
    328 U.S. 256 (1946)......................................................................... 7

*Vinson v. Vermilion Cnty., Ill.,*
    776 F.3d 924 (7th Cir. 2015) ............................................................... 3

## <u>Other Authorities</u>

Fed. R. Civ. P. 12(c) ................................................................................................... 3

Restatement (Third) of Restitution and Unjust Enrichment § 30 (2011)...................................... 11

## I.    Introduction

There is a well-worn axiom in the real-estate industry: location, location, location.  That is because the value of real estate is largely dependent on what else surrounds a particular plot of land.  And for centuries, the law has recognized that ownership of a plot of land entitles that owner to exploit the land's surface, whatever is beneath that surface, and the sky above that surface. Everyone is entitled to fully enjoy the property they own.  They can breathe the air that comes into that property, listen to the sounds of the world from their property, and bathe in the light shining on that property while soaking in all the sights available to them from their property as well.

Chicago Cubs Baseball Club, LLC ("Plaintiff" or "Cubs") upends such basic and foundational tenets of property ownership by asserting that it somehow has ownership over the light, sounds, and smells that leave its property and enter Defendants' private property.  That is not the law.  There is no question that the Cubs have the right to control whatever they want **on their own property** of Wrigley Field.  But that does not give them any right to control what escapes the borders of that property.  Indeed, just as the Cubs can control and enjoy what they do on and within Wrigley Field, so too Defendants have the right to control and enjoy their own private property, regardless of the fact that it is across the street from Plaintiff.  Defendants have the right to see what they can see from their own property.  They have the right to have guests on their property and to allow their guests to enjoy the property to same extent as Defendants.  And— being duly licensed by the City of Chicago to operate a business on their property—Defendants have the right to conduct business on their property and charge guests to visit the premises.

Plaintiff's claims of misappropriation (count I) and unjust enrichment (count II) fly in the face of such well settled principles of property ownership.[1]  Even if this Court accepts all of

---

[1] Plaintiff asserts five additional claims, all of which are based on allegations that Defendants misused Plaintiff's trademarks, but those trademark issues are separate and irrelevant to the misappropriation and unjust enrichment claims.

Plaintiff's well-pleaded facts as true, Plaintiff cannot maintain a cause of action under either theory, and judgement against Plaintiff on those claims is appropriate.

## II.     The Background Facts

The Cubs choose to play baseball games and host other events at Wrigley Field in Chicago. Wrigley Field is an open-air stadium. As such, anyone with the right vantage point can look directly into the stadium, no differently than looking over a fence. Additionally, sounds emanating from within Wrigley Field will travel outside its boundaries because the stadium is not enclosed.

Defendants occupy private property directly across from Wrigley Field. Defendants have made a number of modifications to their property, including obtaining a license from the city of Chicago to operate in a commercial manner during prescribed times. Defendants host events for paying customers, which allows the customers access to Defendants' property, including an open-air rooftop area. From the rooftop, anyone can readily see the surrounding neighborhood, skyline, lake, and into Wrigley Field. If the Cubs play a baseball game at Wrigley Field, that game is visible, albeit obstructed, from the confines of Defendants' private property. If the Cubs host a concert, sound from concert can be heard from the confines of Defendants' private property.

Dissatisfied with Defendants' enjoying their own property, the Cubs decided to sue Defendants for taking in the sights and sounds that invade Defendants' personal space. Indeed, every allegation made by Plaintiff is directed to activities Defendants conduct within the four corners of the property Defendants own. The Cubs demand payment for "misappropriating" the view that Defendants have from Defendants' personal property. The Cubs are furious that Defendants would use their personal property to run a successful business where people sit and stand on Defendants' own property and look out to see whatever can be seen and hear whatever can be heard. Plaintiff cannot abide the fact that Defendants can see and hear what Plaintiff intentionally displays in full view to the world at its open-air stadium. Plaintiff asserts that

Defendants and its patrons are "unjustly enriched" by occupying Defendants' property and seeing and hearing the light and sounds that enter into Defendants' property from the surrounding neighborhood. Plaintiff contends that Defendants must pay Plaintiff for the privilege of owning a property across from Wrigley Field because Plaintiff spent millions of dollars to make billions of dollars at Wrigley Field.

### III.    Rule 12(c) Provides for Judgment Against Plaintiff on Its Claims of "Misappropriation" and "Unjust Enrichment"

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). With respect to Plaintiff's Complaint, the pleadings closed on May 20, 2025 when Defendants filed their Answer. Dkt. 56. Accordingly, judgment against Plaintiff on Counts I (misappropriation) and II (unjust enrichment) is appropriate at this time.

"To survive a motion for judgment on the pleadings under Rule 12(c), 'the complaint must state a claim that is plausible on its face.'" *Prince v. Dart*, 2015 WL 3798435, *1 (N.D. Ill. 2015) (Kocoras, J.) quoting *Vinson v. Vermilion Cnty., Ill.*, 776 F.3d 924, 928 (7th Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id*. quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

In considering a motion brought under Rule 12(c), the court accepts all well pleaded facts as true and construes reasonable inferences in favor of the non-moving party. *Prince*, 2015 WL 3798435 at *1. The court considers the complaint itself, documents attached to the complaint, documents critical to the complaint and referred to in it, and information subject to judicial notice.

*Id*. But still, the requirement to accept an allegation in a complaint as true is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-679.

## IV.     This Court Should Render Judgement Against Plaintiff on Counts I and II

Plaintiff's Count I for "misappropriation" and Count II for unjust enrichment are two sides of the same coin. Both are based on a theory that Defendants must somehow pay the Cubs for Defendants' right to enjoy their own private property simply because Plaintiff voluntarily chose to operate its business in full, open view of Defendants' property. No such law exists. Under the Cubs theory, anyone that witnesses or listens to events from their own property must somehow compensate the subject of those events. Under the Cubs theory, anyone that benefits due to the Cubs decision to operate in the middle of the Wrigleyville neighborhood is unbiddenly beholden to Plaintiff. But the Cubs have no right to dictate how Defendants use their own private property. The Cubs voluntarily chose to play baseball games in an open stadium and in plain view of the neighborhood around them. They cannot now complain that the public—including Defendants— can see what the Cubs voluntarily chose to disclose.

### A.     Defendants are entitled to judgment on the pleadings on Count One for misappropriation

The tort of misappropriation originated from the U.S Supreme Court case *Int'l News Serv. v. Associated Press*, where the defendant copied and transmitted news reports from plaintiff to defendant's customers representing the reports as defendant's own and for the purpose of publication in the customers' newspapers. *Bd. of Trade of City of Chicago v. Dow Jones & Co., Inc.*, 108 Ill. App. 3d 681, 690 (1st Dist. 1982), *aff'd*, 98 Ill. 2d 109, 456 N.E.2d 84 (1983), *citing Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918). In that case, the Supreme Court held

that the transmission of the stories for commercial use constituted misappropriation by selling the plaintiff's goods as defendant's own. *Id*. at 242. (defendant's conduct is a "fraud upon complainant's rights," that "differs from the ordinary case of unfair competition in trade principally in this that, instead of selling its own goods as those of complainant, it substitutes misappropriation in the place of misrepresentation, and sells complainant's goods as its own."). A cause of action for misappropriation is intended to protect property rights that are not patented or copyrighted. *Capitol Records, Inc. v. Spies*, 130 Ill. App. 2d 429, 432 (1st Dist. 1970), *citing Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225 (1964).

Courts have also recognized that a claim for misappropriation should not be used to frustrate economic freedoms. *See Sheridan v. iHeartMedia, Inc.*, 255 F.Supp.3d 767, 777 (N.D. Ill. 2017) *citing Board of Trade,* 98 Ill.2d 109 (1983) ("Competing with the policy that protection should be afforded one who expends labor and money to develop products is the concept that freedom to imitate and duplicate is vital to our free market economy.") A company's right to reap profit from business without interference does not preclude others from profiting from the demand for "collateral" services that are created by the popularity of that business. *Bd. of Trade of City of Chicago*, 108 Ill. App. 3d at 692, *citing Nat'l Football League v. Governor of State of Del.*, 435 F.Supp. 1372 (D. Del. 1977).

1. **Plaintiff has not identified property that has allegedly been misappropriated**

Plaintiff's cause of action for misappropriation fails for the simple reason that Defendant has not misappropriated any of the Plaintiff's property. Plaintiff does not assert a claim of misappropriation of trade secrets or anything confidential. Nor is its claim one of misappropriation of likeness or some other personal right. And the Complaint is devoid of any assertion that Defendants reproduce, copy, or transmit anything the Cubs own. Rather, it is a generic assertion

that Defendants' enjoyment of their own personal property is a "misappropriation" of reality that Defendants can plainly observe and experience from the comfort of their own private property.

While Plaintiff may have a property right in any recordings of Cubs baseball games, the live game itself enjoys no such protection, and this Court need not accept such legal conclusions in assessing Defendants' motion.[2]  Wrigley Field is an open-air stadium existing in the heart of Chicago.  It is surrounded by neighborhood residences and businesses.  The Cubs are not required to play at Wrigley Field; they chose to play at Wrigley Field.  Similarly, the Cubs voluntarily undertook the expense of renovating Wrigley Field.  As the Complaint makes clear, the Cubs voluntarily added a host of new features to Wrigley Field, including eliminating a third of the right field bleacher seats and installing a massive scoreboard.  See Dkt. 12.  Presently, the scoreboard blocks the view into the park from the property behind the scoreboard:



While the Cubs could have put the scoreboard in left field and blocked Defendants' view, for its own reasons, Plaintiff chose not to. So too, the Cubs could erect further barriers around the park,

---

[2] Recordings of games are not at issue in the case.  Plaintiff does not assert any copyright claim of any kind.  The Cubs also must go to great lengths to contractually bind patrons entering its property to restrict and gag those patrons against disclosing what they see.  See https://www.mlb.com/cubs/tickets/terms-and-conditions.  But the Cubs cannot compel non-ticket holders that choose not to attend Wrigley Field to abide by the same contractual restrictions respecting what they witness live and in-person outside of Wrigley Field.

to wall themselves off from the surrounding neighborhood and block views like they chose to do in 2002. The Complaint's allegations about improvements to Wrigley and money spent to field a baseball team that plays there merely confirms Plaintiff fully controls its own property.

Plaintiff has no property right in precluding a person present on that person's own property from observing and hearing what can be seen and heard with the naked ear and eye. Plaintiff can obstruct those sights and sounds, but has no legal basis to recover monetary damages against individuals that see and hear what Plaintiff allows to be seen and heard.

## 2. Plaintiff cannot preclude Defendants' enjoyment of Defendants' property

The Complaint does not allege—nor can it—that Plaintiff owns or has any proprietary interest in Defendants' physical property of 1050 W. Waveland Avenue in Chicago. Plaintiff's Complaint does not assert that Defendants physically enter Wrigley Field. There is no allegation that Defendants record, copy, broadcast or otherwise transmit Cub games. There is no assertion that Defendants ever do anything outside of Defendants' own property. Rather, every allegation is directed to activities Defendants conduct within the four corners of the property Defendants own.

The law confirms that property owners have the total right of enjoyment of their own physical property. "It is ancient doctrine that at common law ownership of the land extended to the periphery of the universe—Cujus est solum ejus est usque ad coelum." *United States v. Causby*, 328 U.S. 256, 260–61 (1946). While the Supreme Court noted that such a basic principle must yield to the modern reality of commercial air travel, the principle that a property owner owns its land and the sky above to do with as he wishes remains as strong as ever. The Court was clear: "it is obvious that if the landowner is to have full enjoyment of the land, he must have exclusive control of the immediate reaches of the enveloping atmosphere." *Id*. at 264. More pointedly, "[t]he landowner owns at least as much of the space above the ground as they can occupy or use

7

in connection with the land. The fact that he does not occupy it in a physical sense—by the erection of buildings and the like—is not material." *Id*. internal citations omitted. The landowner owns his ground property and the airspace above it "for the purpose of light and air is used." *Id*. at 265.

As noted, there is no dispute that all the complained-of actions by Defendants occur on Defendants' own property. Defendants certainly do have guests come to their property, and those guests pay for the privilege of being present on the property and partaking in the food and drinks provided by Defendants while the guests are present. Those same guests are free to move about the property, watch the same TV broadcasts that are transmitted by commercial providers to millions of Americans. They are free to sit inside, look out windows, and utilize the rooftop seating structures erected on Defendants' property. From the open-air rooftop, Defendants and their guests can view Lake Michigan, the Wrigleyville neighborhood, the Chicago skyline, sunsets, moonrises, the public crowds meandering along Waveland Avenue, and whatever view there may be of neighboring Wrigley Field including any ongoing baseball games. Those observations and enjoyments are not misappropriations of Plaintiff's property interest. They are simply the reality that exists on Defendants' own property.

### 3. Plaintiff does not have a property interest in the sights and sounds it allows to leave the confines of Wrigley Field

The count for misappropriation should be dismissed because Plaintiff cannot show any property right Defendant has misappropriated. Plaintiff only complains about what Plaintiff allows to be publicly available outside the walls of Wrigley Field (obstructed views, echoing sound, and the aroma of food and beer). But while the Cubs have a right to control what transpires within Wrigley Field (and recordings it may make of such events), it does not have a right over the views and sounds that enter its neighbors' properties simply by virtue of its neighbors owning property in proximity to the location Plaintiff's chose to operate.

The Cubs claim that it owns the light passing *out* of Wrigley Field, *over* the public thoroughfare of Waveland Avenue and then *into* Defendants' property. The Cubs claim it owns the pressure wave that is the sound of the crowd, crack of the bat, or any other sound emanating from Wrigley Field, crossing over the public thoroughfare, and impacting anyone present at Defendants' property. And when the wind shifts to blow out over the left field fence, carrying with it the smell of stadium concessions (across the public Waveland Ave and into Defendants' property), somehow the Cubs assert that they own that air, that they own those scent molecules, and how dare Defendants breathe that air which, at some point, came through Wrigley Field. To the Cubs, Defendants misappropriate and are somehow unjustly enriched by their experiencing such free and open physical phenomena that—without any action by Defendants—enter unbidden into Defendants' property. Indeed, everything the Cubs complain about constitutes the real, physical world that passed *out* of Wrigley Field and then *into* Defendants' property which Defendants and its guests experience in real-time directly through their five senses while exclusively occupying Defendants' private property.

Under Plaintiff's theory, anyone that gains a benefit from a party's decision to host a live event would be liable to that party. Businesses that can charge higher prices and sell more goods when the Cubs are in town would owe Plaintiff money. The neighbor that rents his driveway or garage for parking during a game would somehow owe Plaintiff. The bar that sold a ticket-holder a beer before entering the stadium owes Plaintiff because, if that bar were not there, the ticket-holder would have had to buy a drink at Wrigley instead. Plaintiff is wrong. It is irrelevant whether Plaintiff owns a vacant lot, a shabby tenement, a one-of-a-kind architectural marvel that is priceless and beyond compare, or a baseball field on which it hosts live events. It is irrelevant that Plaintiff chose to spend millions of dollars building up its own property. What Plaintiff chooses to do on

its property is Plaintiff's own business and its own choice. That is not Defendants' responsibility and Defendants owe Plaintiff nothing, regardless of whether Defendants choose to experience the world from their own property and regardless of whether Defendants' location bestows on them a benefit due to Plaintiff's choices.

Defendants are entitled to judgment on Count One for Misappropriation.

**B.     Defendants are entitled to judgment on Count Two for unjust enrichment**

To state a cause of action for unjust enrichment, a plaintiff must establish: (1) the defendant has unjustly retained a benefit to the plaintiff's detriment, and (2) the defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience. *MetroPCS v. Devor*, 215 F.Supp.3d 626, 634–35 (N.D. Ill. 2016), *citing HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145 (Ill. 1989). Plaintiff's cause of action for unjust enrichment fails because it has not sustained a detriment by allowing the sights and sounds of what transpires within Wrigley Field to leave the confines of Wrigley and permeate the surrounding neighborhood. Aside from that, any benefit Defendant may obtain from utilizing its own property does not violate and principle of justice, equity, or good conscious. Quite the contrary. Plaintiff's insistence that Defendants pay for Defendants' use of Defendants' property shocks the conscious and is inequitable.

Here, Plaintiff voluntarily elected to take on the "burden" of owning one of the most popular, beloved, recognizable, and profitable sports teams of all time. Plaintiff elected to undertake a renovation project for Wrigley Field for the purpose of continuing to play baseball games in an open-air stadium in the middle of a populous city surrounded by residences and commercial businesses. Had Plaintiff wanted to avoid prying eyes, it could have built a domed stadium, moved the team to another location, or erected higher walls to cage itself in. Plaintiff chose not to. Plaintiff did not ask for Defendants' permission to renovate Wrigley Field and stay

in Wrigleyville. So too, Defendants did not ask Plaintiff to improve the plot of land at 1060 W. Addison St. and to continue playing baseball games in an open-air stadium. Rather than wall off the stadium like a prison yard, Plaintiff chose to keep the outfield walls low so that the view from inside the stadium invited the warm, welcoming, neighborhood-esque feel that gave the park its "friendly confines" nickname. It cannot complain now about its choices.

The law precluding restitution of unrequested benefits fully undercuts Plaintiff's claims in this case. As discussed in the Restatement (Third) of Restitution and Unjust Enrichment:

> When one party has conferred a valuable (though unrequested) benefit on another in consequence of mistake, fraud, or compulsion, the equities favoring the claimant will sometimes justify requiring the recipient to pay for the benefit at a court-determined value. **The equities of the parties are different when the claimant has elected to act in pursuit of his own objectives**. When liability on such a claim would subject the recipient to a forced exchange, imposing a new money obligation as compensation for benefits that the recipient would have been free to refuse, **restitution is invariably denied**.
>
> The issue of restitution for unrequested benefits of this kind is most distinctively presented where a physical proximity or a coincidence of objectives makes it impossible for the claimant to pursue a self-interested purpose without at the same time conferring specific and quantifiable benefits on the recipient; benefits, moreover, for which another recipient in the same circumstances might reasonably be willing to pay. **Restitution is denied in such cases, notwithstanding what may be a manifest enrichment of the recipient at the claimant's expense**, as a necessary consequence of protecting the recipient's freedom of contract.

Restatement (Third) of Restitution and Unjust Enrichment § 30 (2011), emphasis added.

It is as if the Restatement were written with the exact situation before this Court in mind and with the particular intent of forbidding the exact type of claims advanced by the Cubs. Indeed, here, there is no allegation of "mistake, fraud, or compulsion." Instead, the Cubs voluntarily elected to pursue its own objectives of trying to lure fans to continue to support the Cubs (and throw money at them) by staying in Chicago, renovating Wrigley Field, keeping it an open air

11

stadium, and basking in the "friendly confines" atmosphere that the surrounding neighborhood, including the unique view *out* of Wrigley Field of the surrounding rooftops, provide. There is no question that if the Cubs had demanded Defendants' finance the improvements, Defendant could have (and would have) refused. It is not Defendants' property and Defendants have no control over it.

More particularly, as the Restatement points out, restitution is denied when *physical proximity* makes it impossible for the claimant to pursue a self-interested purpose without at the same time conferring specific and quantifiable benefits on the recipient—regardless of whether other recipients of the same benefit pay (or would pay) for them. That hits Plaintiffs claims on the nose. The Cubs complain that other rooftops pay the Cubs. That is irrelevant. The Cubs could not have implemented the current improvements, including playing open-air games, without simultaneously being in a situation where Defendants are able to view the field.[3]

While caselaw addressing unrequested benefits—and commensurate claims of generic misappropriation and unjust enrichment like the Cubs have made—are few and far between, where it has been addressed the court has confirmed no claim exists. For example, in *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 11, 198 Vt. 420, 426, 115 A.3d 1009, 1013 (2015), the court considered one party benefiting from a neighbor's improvement to the neighbor's property. The court explained:

> "one consideration is that a claimant generally cannot compel the recipient to pay for benefits voluntarily conferred if, had the transaction been proposed as a contract, the recipient would have been able to reject it. For example, if adjacent property owners are under no obligation to make infrastructure improvements unless and until they develop their lots, a claimant who undertakes the improvements cannot recover in restitution

---

[3] While Plaintiff could obviously build higher walls, or erect view-blocking signage (as they did to some extent after filing suit), that is irrelevant because they had (and have) chosen not to completely block the view or prevent Defendants' view.

12

> from the benefitted recipient, even if the recipient's property value increased as a result of the improvements."

The *Birchwood* case recognized that the entirety of the Restatements' principle against permitting claims for unrequested benefits (like Plaintiff's claim here) stems from the case of *Ranquist v. Donahue*, 710 F.Supp. 1160 (N.D.Ill.1989). There, one landowner elected not to pay for road, curb, sewer, and water main improvements (among others), while surrounding owners foot the bill. *Ranquist,* 710 F.Supp. at 1161. Even though that landowner benefited from all the improvements its neighbors funded, the court confirmed it could not be responsible for any payment to the others regardless of the benefit it received stating, "[t]o be sure, the defendants' post-construction actions demonstrate that they derived a benefit from the construction, but the receipt of the benefits does not suffice to render a person liable." *Id*. at 1162. As the *Birchwood* court recognized, "the rationale of *Ranquist,* [is] now explicitly adopted by the Restatement." *Birchwood*, 198 Vt. At 428. The *Birchwood* court further rejected the contention that the value of the benefit conferred upon the unrequesting party has any impact on the determination that no claim exists. "[A] benefit can be both incidental and substantial" without imposing liability, and "the characterization of the recipient as a 'holdout owner' or 'free rider' is of no consequence to the outcome." *Id*. 428-429.

There is no question that here, Defendants are free to reject any contractual proposals proffered by Plaintiff. Consequently, the fact that Defendants are able to benefit from their physical location in proximity to Plaintiff—and Plaintiff failing to take measures to enclose its own property—does not constitute and cannot give rise to an actionable claim. Rather, it is entirely within Defendants' rights to use their property however they see fit including maximizing any incidental benefit that Plaintiff's unilateral actions may confer.

The fact that Defendants charge guests to occupy their property and soak up the light, air, sounds, and smells emanating freely from Wrigley Field throughout the summer months is totally irrelevant. Plaintiff has no right to dictate how Defendants choose to use their property. While municipalities certainly have the power to pass ordinances that restrict how a property owner may utilize their property (for example the city of Chicago may zone areas as residential, commercial, hybrid, or other, limit the times in which loud noise is permitted, or make other restrictions), the Cubs are not the City of Chicago or a government body. Plaintiff is a private business entity (a Limited Liability Company, in fact) with no greater power or rights—despite its billions of dollars—than any other LLC, business, or private citizen, including Defendants.

Consequently, when the Cubs baseball team takes the field at Wrigley, and the sun's rays bounce off the grass, dirt, players, and ball, reflecting out of Wrigley and into the waiting eyeballs of Defendants and their patrons as they sit atop 1050 W. Waveland Avenue, Defendants are acting entirely within their legal right to enjoy the benefits of their property, proximity, and any improvements to the neighborhood that any surrounding neighbor—including the Cubs—voluntarily chose to make. And Defendants are entitled to enjoy those benefits without compensation to any of its neighbors, particularly the Cubs.

## V.    Conclusion

It is not a misappropriation or unjust enrichment to experience in real-time those reflected light rays that bounce out of Wrigley Field. It is not a misappropriation or unjust enrichment to hear in real time the sounds from the ball park echoing through the neighborhood. It is merely enjoyment of one's property and the physical phenomena that enter into that property at a given moment. The Cubs can "recoup their investment" though selling tickets to anyone that wants to buy tickets to visit the Cubs' property and anyone that wants to buy the Cubs' $9.00 hot dog, $17.00 beer and other souvenirs and amenities while they are there. But what the Cubs cannot do,

is insist that its neighbors foot the bill for the Cubs' decision to play at Wrigley Field in full view of the surrounding neighborhood. Even if every well-pleaded fact in Plaintiff's Complaint were true, it does not entitle Plaintiff to any relief based on Defendants and its patrons seeing what they can see and hearing what they can hear from Defendants' private property—even if that includes a view into Wrigley Field during a ball game or hearing the sound of a concert being played at the stadium.

Plaintiff's claims of misappropriation and unjust enrichment are not supported by the law. Rather, the law confirms that Defendants are entitled to use, enjoy, and profit from their property however they see fit even if they benefit simply due to their physical proximity to Plaintiff. Plaintiff voluntarily chose to occupy and use Wrigley Field. Defendants owe Plaintiff nothing for anything Defendants and their guests are able to physically experience while remaining on Defendants' own property. This Court should grant Defendants' motion and enter judgment against Plaintiff on its misappropriation and unjust enrichment claims.

Dated: June 3, 2025

Respectfully submitted

*/s/ Matthew De Preter*
Matthew De Preter
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. Suite 2800
Chicago, IL 60606
Tel.: 312-755-3153
cdepreter@agdglaw.com


J. Timothy Cerney
Carrol, Hartigan & Cerney, Ltd.
218 N. Jefferson Street, Suite 102
Chicago, IL 60661
Phone: 312-236-3575
Cell: 312-590-0233
jtc@chc-law.com

Attorneys for Defendants

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on June 3, 2025 a true and correct copies of the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF System, which will provide electronic notification of such filing to all attorneys of record.


<u>/s/ Matthew De Preter</u>
Matthew De Preter
One of the Attorneys for Defendants