**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 24-cv-05086 |
| v. | ) | |
| | ) | Honorable Sharon Johnson Coleman |
| AIDAN DUNICAN, an individual; and | ) | |
| ROOFTOP BY THE FIREHOUSE, INC. d/b/a | ) | |
| WRIGLEY VIEW ROOFTOP, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**PLAINTIFF CHICAGO CUBS BASEBALL CLUB, LLC'S OPPOSITION TO
DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO
FEDERAL RULE OF CIVIL PROCEDURE 12(c)**

---

Martin L. Roth, P.C.
Kent Hayden
Nadia Abramson
Kirkland & Ellis LLP
333 West Wolf Point
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: martin.roth@kirkland.com
        kent.hayden@kirkland.com
        nadia.abramson@kirkland.com

*Attorneys for Plaintiff Chicago Cubs Baseball
Club, LLC*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL BACKGROUND ............................................................................................. 2

I.     THE CUBS AND WRIGLEY FIELD ................................................................... 2

II.    DEFENDANTS' BUSINESS OF SELLING TICKETS TO CUBS' EVENTS ........... 3

III.   DEFENDANTS CONTINUE TO SELL TICKETS TO WRIGLEY FIELD
EVENTS AFTER EXPIRATION OF CUBS' LICENSE AGREEMENT ................... 4

ARGUMENT ...................................................................................................................... 5

I.     DEFENDANTS' MOTION ON THE CUBS' MISAPPROPRIATION
CLAIM SHOULD BE DENIED ........................................................................... 5

     A.    The Cubs State a Plausible Claim for Misappropriation ................................. 6

     B.    Defendants' Strawman Argument is Unavailing ............................................ 9

II.    DEFENDANTS' MOTION ON THE CUBS' UNJUST ENRICHMENT
CLAIM SHOULD BE DENIED ......................................................................... 14

CONCLUSION ................................................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bannon v. Univ. of Chicago,*
503 F.3d 623 (7th Cir. 2007) ................................................................5, 6

*Bd. of Regents of Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n,*
546 F. Supp. 1276 (W.D. Okla. 1982) .......................................................11

*Bd. of Trade of Chi. v. Dow Jones & Co.,*
108 Ill. App. 3d 681, 439 N.E.2d 526 (1982), *aff'd,* 98 Ill. 2d 109, 456 N.E.2d
84 (1983) ...........................................................................6, 7, 13

*Birchwood Land Company v. Krizan,*
115 A.3d 1009 (Vt. 2015) ................................................................15

*Capitol Records, Inc. v. Spies,*
130 Ill. App. 2d 429, 264 N.E.2d 874 (Ill. App. Ct. 1970) .................................7, 8

*Cothron v. White Castle Sys., Inc.,*
477 F. Supp. 3d 723 (N.D. Ill. 2020) .......................................................5

*Driskill v. Dallas Cowboys Football Club, Inc.,*
498 F.2d 321 (5th Cir. 1974) ..............................................................12

*Electrolux Corp. v. Val-Worth, Inc.,*
161 N.E.2d 197 (N.Y. 1959) ...............................................................6

*Frontier Supply Chain Sols., Inc. v. Streamline Transp. Sols., LLC,*
2014 WL 3705349 (N.D. Ill. July 25, 2014) ...............................................13

*International News Service v. Associated Press,*
248 U.S. 215 (1918) ...................................................................*passim*

*Kenall Mfg. Co. v. Cooper Lighting, LLC,*
354 F. Supp. 3d 877 (N.D. Ill. 2018) .......................................................3

*Laumann v. Nat'l Hockey League,*
907 F. Supp. 2d 465 (S.D.N.Y. 2012) .....................................................12

*Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.,*
2009 WL 981384 (N.D. Ill. Apr. 13, 2009) .................................................2

*McNabb Bennett & Assocs., Inc. v. Terp Meyers Architects,*
1987 WL 7817 (N.D. Ill. Mar. 10, 1987) .................................................6, 8

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*MetroPCS v. Devor*,
215 F. Supp. 3d 626 (N.D. Ill. 2016) ...................................................................................2

*Mogan v. City of Chicago*,
2022 WL 159732 (N.D. Ill. Jan. 18, 2022) .........................................................................9

*N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*,
163 F.3d 449 (7th Cir. 1998) ..............................................................................................5

*Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*,
675 F.2d 367 (D.C. Cir. 1982) ..........................................................................................12

*Nat'l Exhibition Co. v. Fass*,
143 N.Y.S.2d 767 (N.Y. 1955) ..........................................................................................12

*In re Nat'l Football League's Sunday Ticket Antitrust Litig.*,
933 F.3d 1136 (9th Cir. 2019) ...........................................................................................11

*National Football League v. Governor of State of Delaware*,
435 F. Supp. 1372 (D. Del. 1977) .....................................................................................13

*Pittsburgh Athletic Co. v. KQV Broad. Co.*,
24 F. Supp. 490 (W.D. Pa. 1938) ................................................................................ *passim*

*Ranquist v. Donahue*,
710 F. Supp. 1160 (N.D. Ill. 1989) ...................................................................................15

*Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*,
87 F. Supp. 3d 874 (N.D. Ill. 2015) ..................................................................................11

*Sharbaugh v. First Am. Title Ins. Co.*,
2007 WL 3307019 (N.D. Ill. Nov. 2, 2007) ......................................................................14

*Soderholm v. Chi. Nat'l League Ball Club, Inc.*,
225 Ill. App. 3d 119, 587 N.E.2d 517 (1992) ...................................................................11

*In re Unified Messaging Sols., LLC Pat. Litig.*,
2013 WL 5405698 (N.D. Ill. Sept. 25, 2013 ......................................................................3

*United States v. 16.92 Acres of Land*,
670 F.2d 1369 (7th Cir. 1982) .............................................................................................9

*United States v. Causby*,
328 U.S. 256 (1946) .............................................................................................................9

*Wis. Interscholastic Athletic Ass'n v. Gannett Co.*,
658 F.3d 614 (7th Cir. 2011) .......................................................................................11, 12

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Zacchini v. Scripps-Howard Broad. Co.*,
    433 U.S. 562 (1977)...............................................................................................8, 10, 11

**Rules**

Fed. R. Civ. P. 12 ...............................................................................................................5, 6

**Other Authorities**

Restatement (Third) of Restitution and Unjust Enrichment § 30 (2011)................................14, 15

# INTRODUCTION

The Chicago Cubs Baseball Club, LLC (the "Cubs" or "Plaintiff") filed this lawsuit to protect their exclusive right to sell tickets to watch Cubs games and other events at Wrigley Field. Compl. ¶¶ 3, 24. Defendants offer ***no authority*** for their erroneous contention that the Cubs have no such right, and instead spend the entirety of their Motion for Judgment on the Pleadings mischaracterizing their own business and attacking arguments the Cubs never made.

Defendants—without a license or consent from the Cubs—"run a business selling tickets to view Cubs games and other events that take place at Wrigley Field and, in the process, are unjustly enriching themselves at the expense of the Cubs' property rights." Compl. ¶ 1. While misappropriation claims are rare, cashing in on a view of live sports games from a nearby rooftop constitutes misappropriation because it violates the team's "right to control the use" of its property. *Pittsburgh Athletic Co. v. KQV Broad. Co.*, 24 F. Supp. 490, 492 (W.D. Pa. 1938). That is precisely what the Cubs claim in this case.

But Defendants' motion does not address the Cubs' actual misappropriation claim based on the ***Cubs'*** property rights. Instead, they attack their own strawman argument that the Cubs are out to stop anyone who benefits from the "light, sounds, and smells that leave" Wrigley Field. Mot. at 1, 4. Defendants then admonish the Cubs for allegedly "dictat[ing] how Defendants use their own private property," which they inaccurately portray as nothing more than a sightseeing destination and rooftop bar. *Id.* at 4, 8.

To be clear, this case is about Defendants' use and sale of the Cubs' property by wrongfully selling tickets to view Wrigley Field events without permission. The Cubs' assertion of their rights should come as no surprise: for nearly twenty years, Defendants paid a licensing fee to the Cubs to use these exact rights. Compl. ¶ 22. While Defendants are free to enjoy their property, now that the license has expired, they may not sell tickets to profit off of the Cubs' property—which is, and

always has been, Defendants' entire business. *Id.* ¶ 27. The allegations in the Complaint make clear that Defendants operate *only* when there is an event taking place at Wrigley Field, and their *sole* business is selling tickets to watch Wrigley Field events. *Id.* Defendants' customer contract even provides that if the rooftop's "line of sight … into Wrigley Field [is] affected," customers may receive a full refund. *Id.* ¶ 25. Because these allegations—which are well pled and well supported—must be accepted as true, Defendants' motion fails. *See Leonel & Noel Corp. v. Cerveceria Centro Americana, S.A.*, 2009 WL 981384, at *1 (N.D. Ill. Apr. 13, 2009).

Defendants' unjust enrichment arguments fare no better. Defendants argue that they are merely "incidental" beneficiaries of the Cubs' proximity to their property and owe no restitution as a result. Mot. at 13. But the Cubs assert unjust enrichment based on Defendants' affirmative act of selling tickets to Wrigley Field events—the exact same business as the Cubs—not for any incidental benefits Defendants may enjoy as the Cubs' neighbor. Compl. ¶¶ 46, 47. While the Cubs expend significant resources and effort to put on each event, Defendants repeatedly (and unjustly) sell tickets to the live performances for their own benefit, all while refusing to obtain a license from or otherwise compensating the Cubs. *Id.* These allegations are sufficient to state a claim under Illinois law. *See MetroPCS v. Devor*, 215 F. Supp. 3d 626, 635 (N.D. Ill. 2016).

In sum, the exclusive right to sell tickets to Cubs' games belongs to the Cubs. Neither Defendants' proximity to Wrigley Field nor their decision to build bleachers overlooking its walls gives them a coequal right to take and sell the Cubs' property. Like their motion to dismiss and motion for reconsideration, Defendants' latest motion is meritless and should be denied.

## FACTUAL BACKGROUND

### I.      THE CUBS AND WRIGLEY FIELD

Both the Chicago Cubs and Wrigley Field have been part of the fabric of Chicago for more than a century. Plaintiff owns and operates the Chicago Cubs, a Major League Baseball team.

Compl. ¶ 9. Since 1916, the Chicago Cubs have played their home games at the historic Wrigley Field. *Id.* The Cubs also host other live events, such as concerts, at their stadium. *Id.* ¶ 1.

The Cubs invest heavily in the team, the organization, and Wrigley Field, spending hundreds of millions of dollars annually on players, coaches, front office personnel, infrastructure improvements, and technology to support the product on the field. Compl. ¶ 10. The Cubs recoup these investments by selling tickets to live Cubs games and events at Wrigley Field. *Id.* ¶¶ 13-15.

## II. DEFENDANTS' BUSINESS OF SELLING TICKETS TO CUBS' EVENTS

Wrigley View Rooftop is located at 1050 West Waveland Avenue in Chicago. Compl. ¶ 5; Am. Answer ¶ 4.[1] Defendant Aidan Dunican is the founder and sole officer of Wrigley View Rooftop and controls its operations, marketing, and sales. Compl. ¶¶ 6, 17.

Wrigley View Rooftop's sole business consists of selling tickets to events at Wrigley Field, which can be seen from bleachers and a skydeck Defendants built on their rooftop. Compl. ¶¶ 18-19, 27; Answer ¶¶ 18-19, 27. Defendants advertise and sell tickets to specific Cubs games on their website, which copies the Cubs' season calendar. Compl. ¶ 25; Ex. 1.[2] Moreover, Wrigley View Rooftop is open only when there are events taking place at Wrigley Field. Compl. ¶ 18; Answer ¶ 18. Fans cannot access the rooftop and facilities unless they pay Defendants for a ticket to a Wrigley Field event and "must vacate [the] property 30 minutes after the conclusion of the game or event." Compl. ¶ 19; Ex. 2.

---

[1] Several weeks after filing their Answer, Defendants filed an Amended Answer, which contradicts certain admissions made in their original Answer. *Compare* Dkt. 54 ("Answer"), *with* Dkt. 56 ("Am. Answer").

[2] A court may consider "documents that are critical to the [pleadings] and referred to in [them], and information that is subject to proper judicial notice," but only if those facts "are consistent with the pleadings." *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 881 (N.D. Ill. 2018). The Cubs respectfully request that the Court take judicial notice of the various exhibits of Wrigley View Rooftop's website and brochure, which are referenced repeatedly in the Complaint. *See In re Unified Messaging Sols., LLC Pat. Litig.*, 2013 WL 5405698, at *1 (N.D. Ill. Sept. 25, 2013) (taking judicial notice of website printouts attached as exhibits).

As Defendants' marketing materials, customer contract, and their own business name demonstrate, Defendants sell tickets to *view* events at Wrigley Field. Wrigley View Rooftop's marketing brochure features a clear view of Wrigley Field on the first page and makes several representations regarding the line of sight into the stadium, including promises of "breathtaking views of historic Wrigley Field" so guests can "[c]atch all the on-field action." Compl. ¶ 18; Ex. 3. Defendants also advertise their bleachers and skydeck, which they constructed to see over Wrigley Field's barriers. Defendants' customer contract even provides that if the rooftop's "line of sight … into Wrigley Field [is] affected," customers can get a refund. Compl. ¶ 25.

Defendants' business is in direct competition with the Cubs' business, which also consists of selling tickets to Wrigley Field events. Compl. ¶ 33; *see* Dkt. 36 ("Plaintiff is in the business of selling tickets to baseball games and live events at Wrigley Field."). For instance, their website, referenced repeatedly in the Complaint, advertises Defendants as a similar "ballpark" experience to attending an event at Wrigley Field, with seating "closer to the concert stage than many of the seats inside the stadium" for a price that "won't break the bank." Ex. 4. Defendants even falsely claim an "official" partnership and endorsement by the Cubs to cash in on the Cubs' brand and divert loyal fans away from Wrigley Field. Compl. ¶¶ 37-38; Ex. 3.

## III. DEFENDANTS CONTINUE TO SELL TICKETS TO WRIGLEY FIELD EVENTS AFTER EXPIRATION OF CUBS' LICENSE AGREEMENT

Between January 27, 2004, and December 31, 2023, Defendants paid the Cubs for a license to sell tickets to games and other Wrigley Field events and use Cubs' intellectual property in their marketing. Compl. ¶ 22; Am. Answer ¶ 21. When the agreement expired in 2023, Defendants did not enter into a new agreement or otherwise obtain a license from the Cubs. Compl. ¶ 22. Nonetheless, for the past two years, Defendants have continued to sell tickets to Wrigley Field

events without permission and despite the Cubs' clear assertion that doing so would violate the Cubs' property and other rights. *Id.* ¶¶ 26-28; Am. Answer ¶¶ 25, 46.

Defendants do not pay any of the costs incurred by the Cubs for operating an MLB team or putting on events at Wrigley Field. Compl. ¶ 20; Answer ¶ 20. Indeed, Defendants have not paid the Cubs anything since December 2023, when the parties' agreement expired. Compl. ¶ 22.

## ARGUMENT

Defendants' motion should be denied because the Cubs allege plausible claims for misappropriation and unjust enrichment. A Rule 12(c) motion is "reviewed under the same standard as a motion to dismiss under Rule 12(b)." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). To survive the motion, "a complaint must state a claim to relief that is plausible on its face." *Cothron v. White Castle Sys., Inc.*, 477 F. Supp. 3d 723, 727 (N.D. Ill. 2020). "Only when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved will a court grant a Rule 12(c) motion." *Bannon v. Univ. of Chicago*, 503 F.3d 623, 628 (7th Cir. 2007).

## I. DEFENDANTS' MOTION ON THE CUBS' MISAPPROPRIATION CLAIM SHOULD BE DENIED

Defendants have not met their burden of demonstrating "beyond doubt that the plaintiff cannot prove any facts that would support [its] claim for relief." *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 452 (citations modified). To the contrary, Defendants' argument rests on an incorrect and impermissible reinterpretation of the Cubs' misappropriation claim, as well as a mischaracterization of their own business, to distract from Defendants' parasitic commercial practice of selling tickets to Wrigley Field events. These contentions rest on factual assumptions,

which contradict the well-pleaded allegations of the Complaint and cannot be accepted as true on a Rule 12(c) motion. *See Bannon*, 503 F.3d at 628.

### A.    The Cubs State a Plausible Claim for Misappropriation

#### 1.    Legal Standard for Misappropriation Claim

"The controlling question in a misappropriation case is whether the commercial practice at issue is fair or unfair." *Bd. of Trade of Chi. v. Dow Jones & Co.*, 108 Ill. App. 3d 681, 697, 439 N.E.2d 526, 537 (1982), *aff'd,* 98 Ill. 2d 109, 456 N.E.2d 84 (1983); *see also Electrolux Corp. v. Val-Worth, Inc.*, 161 N.E.2d 197, 204 (N.Y. 1959) ("The growth of the protection against such 'parasitism' reflects the requirement that the courts and the law keep pace with the mushrooming increases in business complexity[.]"). Relevant considerations include whether: (1) "the plaintiff created a product through extensive time, labor, skill or money"; (2) "the defendant used the plaintiff's product in competition with the plaintiff, gaining a special advantage (a free ride) because the defendant bore little or no burden of the expense of development"; and (3) "the defendant's use of the plaintiff's product caused commercial damage to the plaintiff." *McNabb Bennett & Assocs., Inc. v. Terp Meyers Architects*, 1987 WL 7817, at \*6 (N.D. Ill. Mar. 10, 1987).

The claim of misappropriation first arose in the Supreme Court case *International News Service v. Associated Press*, 248 U.S. 215 (1918), in which the Court upheld an injunction prohibiting International News Service from copying and reprinting news gathered at the expense of the Associated Press. The Court held that it was "unfair competition," and therefore misappropriation, for one party to "tak[e] material that has been acquired by [another] as a result of organization and the expenditure of labor, skill, and money … and sell[] it as its own." *Id.* at 239-40. The Court also rejected as "untenable" the argument that publication abandoned any rights the Associated Press had over their property because "[t]he cost of the service would be prohibited

if the reward were to be so limited." *Id.* at 240. Simply put, the Court held "that he who has fairly paid the price should have the beneficial use of the property." *Id.*

Years later, a federal court applied the reasoning in *International News Service* to protect a baseball team's property rights to the games played in its stadium—a situation similar to the question before this Court. In *Pittsburgh Athletic Company*, the owners of a professional baseball team, the Pirates, sought an injunction against a radio broadcasting station, KQV, which would announce the play-by-play of Pirates' games by observing the games from a rooftop it rented adjacent to the stadium. 24 F. Supp. at 490. The Court held that the baseball club had a property right over its live games because it "has, at great expense, acquired and maintains a baseball park [and] pays the players who participate in the game." *Id.* at 492. As a result, the Court concluded: "The right, title and interest in and to the baseball games played within the parks … is vested exclusively in such members." *Id.* at 493-94.

Although misappropriation claims are rare, Illinois courts have affirmed many of these same principles. In *Capitol Records, Inc. v. Spies*, 130 Ill. App. 2d 429, 431, 264 N.E.2d 874, 875 (Ill. App. Ct. 1970), for instance, a court found misappropriation where a defendant re-recorded and sold tapes originally produced by Capitol Records. The Court recognized that this practice was fundamentally unfair because the defendant was "actually taking" the product of another and "tak[ing] advantage of the existing market" to compete and make a profit. *Id.* at 877. Similarly, in *Board of Trade*, a court found that the use of Dow Jones' stock market index and averages, in particular after Dow Jones declined a licensing proposal for this very information, constituted misappropriation. 439 N.E.2d at 530. The court held that merely replicating Dow Jones' indexes in the Board's publications did not constitute a "collateral" business and, therefore, did not escape the broad scope of a misappropriation claim. *Id.* at 537.

2.  Defendants' Sale of Tickets to Live Events at Wrigley Field is Misappropriation

These same principles of unfairness are all clearly present in this case. The Cubs allege a misappropriation claim based on their exclusive property right in selling tickets to live Wrigley Field games and events; indeed, central to the Cubs' business is "sell[ing] the experience of viewing live Cubs baseball as it happens." Compl. ¶ 14. Like the Pirates and the plaintiffs in *International News Service*, *Capitol Records*, and *Board of Trade*, the Cubs "at great expense" develop and maintain their product—Wrigley Field events—by paying the players and assuming the many other costs of operating an MLB team and putting on live events at their stadium. *Id.* ¶¶ 10-12. By creating this product, the Cubs have the exclusive right to capitalize on ticket sales to these real-time events. *Id.* ¶ 3; *see Pittsburgh Athletic Co.*, 24 F. Supp. at 492; *see also Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 575-76 (1977) (finding broadcasting performance without permission was unjust and "similar to preventing petitioner from charging an admission fee"). This is consistent with the Supreme Court's holding: "he who has fairly paid the price should have the beneficial use of the property." *Int'l News Serv.*, 248 U.S. at 240.

Defendants have established a parasitic business that competes with the Cubs' product without contributing anything to its development. *McNabb*, 1987 WL 7817, at *6 (considering competition and "free ride" as relevant factors for misappropriation). Although Defendants agreed for decades to pay for a license to sell tickets to Cubs' games, they now seek to free ride on the Cubs' effort and expense, while at the same time diverting ticket sales away from Wrigley Field. Compl. ¶¶ 18, 22-23. Defendants cite no authority that supports such a right.[3] Thus, Defendant's

---

[3]  Defendants' attempt to legitimize their business with claims that they are "duly licensed by the City of Chicago" is irrelevant for the same reason, as it is undisputed that they do not have a license to sell tickets to Cubs' events ***without Cubs' consent*** (and, in fact, refused to obtain a license from the Cubs). *E.g.*, Mot. at 1.

sale of tickets to Wrigley Field events supports a plausible misappropriation claim.

### B. Defendants' Strawman Argument is Unavailing

Ignoring Cubs' property rights, Defendants mischaracterize the Cubs' misappropriation claim as "based on a theory that Defendants must somehow pay the Cubs for Defendants' right to enjoy their own private property." Mot. at 4. They then take this strawman to its logical extreme, arguing that the Cubs believe "the Wrigleyville neighborhood is unbiddenly beholden to Plaintiff" and will seek "monetary damages against individuals that see and hear what Plaintiff allows to be seen and heard." Mot. at 4, 7. Defendants are mistaken in several respects.

*First*, the Complaint does not allege any claim concerning Defendants' property rights; rather, it alleges that Defendants have misappropriated the ***Cubs' property rights*** by selling tickets to games and events at Wrigley Field. Compl. ¶¶ 40-41. Those events, and the right to sell tickets to those events, belong exclusively to the Cubs.

Because Defendants mischaracterize the Complaint, their motion does not address the Cubs' property rights at all. Instead, Defendants rely on *United States v. Causby*, 328 U.S. 256, 260-61 (1946), to claim an unfettered right to use their property because, under common law, "ownership of the land extended to the periphery of the universe." Mot. at 7. But *Causby*, and many cases after it, have recognized "that doctrine has no place in the modern world." *Causby*, 328 U.S. at 261. Crucially, courts routinely impose restrictions on landowner property rights to protect the rights of others. *See United States v. 16.92 Acres of Land*, 670 F.2d 1369, 1373 (7th Cir. 1982) ("It is axiomatic that property rights are not absolute."); *see also Mogan v. City of Chicago*, 2022 WL 159732, at *16 (N.D. Ill. Jan. 18, 2022) (finding "right to use and enjoy his property is not deeply-rooted or sacrosanct"); *Pittsburgh Athletic Co.*, 24 F. Supp. at 493 (limiting neighboring rooftop landowner's use of property). To be clear, the Cubs do not contest a Wrigleyville resident's ability to walk the streets, sit on their balcony, or otherwise enjoy "the sights and sounds" of the

neighborhood. But this case is not about that. It is about Defendants' business of selling tickets and wrongfully taking Cubs' property. None of Defendants' cases afford a property owner the right to sell tickets to events at a neighboring sports team's stadium because no such right exists.

**Second**, Defendants acknowledge that the Cubs "have a property right in any recordings of Cubs baseball games," but illogically argue—without any case law—that such rights do not extend to "the live game itself." Mot. at 6. Defendants then fault the Cubs for exhibiting their live events "in full view to the world." Mot. at 2.

As a preliminary matter, the Cubs do not exhibit their games "in full view to the world." Every attendee at Wrigley Field pays for a ticket that comes with restrictions and terms. *See* Mot. at 6 n.2. The stadium is surrounded by walls, which Defendants built a set of bleachers and a skydeck to see over. *See* Compl. ¶ 18. The Cubs also charged Defendants a license fee to sell tickets to Cubs' events for decades, and continue to do so with all other rooftops today. *Id.* ¶ 22.

Moreover, courts have already rejected the argument that a plaintiff's publication shields a defendant from liability for misappropriation. The Supreme Court and the court in *Pittsburgh Athletic Company* found the contention "untenable" because the economic investment required to create a product or live performance creates, at the very least, an exclusive right to capitalize on the event. *Int'l News Serv.*, 248 U.S. at 240; *Pittsburgh Athletic Co.*, 24 F. Supp. at 493 (finding lack of physical trespass did not defeat misappropriation claim); *see Zacchini*, 433 U.S. at 569-70 (finding "that petitioner had not abandoned his rights by performing" in public).

In any event, the Cubs have property rights in their live events, including the exclusive right to sell tickets to those events. The *Pittsburgh Athletic Company* court held that sports clubs have the exclusive "right, title and interest in and to the baseball games played within the parks." 24 F. Supp. at 493-94. The Supreme Court and other courts have cited this decision with approval

10

to affirm that "courts had agreed that sports teams ha[ve] a property interest in their games." *In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1144 n.1 (9th Cir. 2019); *Bd. of Regents of Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n*, 546 F. Supp. 1276, 1326 (W.D. Okla. 1982) (affirming that sports teams have "property rights" including "the right to sell their football games for telecast"); *Zacchini*, 433 U.S. at 575 (citing *Pittsburgh Athletic Company* with approval); *see Right Field Rooftops, LLC v. Chi. Baseball Holdings, LLC*, 87 F. Supp. 3d 874, 888 (N.D. Ill. 2015) ("[T]he Cubs are not limited by the antitrust laws with respect to what they do with and how they distribute ***their own product, in this case, live Cubs games***.") (emphasis added).

Beyond the Cubs' rights in the live game itself, the crucial question here is even narrower— does a professional sports team have an exclusive property right ***to sell tickets to*** the games and events that it spends millions of dollars to organize and host? The answer is common sense: of course they do. Selling tickets is the central business operation of the Cubs and all other live-event organizations. Defendants' tickets to those same events only have value because of the work and expense undertaken by the Cubs. That is why Defendants' customer contract offers a refund if the rooftop's "line of sight … into Wrigley Field [is] affected." Compl. ¶ 25. Because the Cubs "fairly paid the price" to create this product, they alone are entitled to its benefits. *Int'l News Serv.*, 248 U.S. at 240; *Wis. Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 624 (7th Cir. 2011) (noting performer's right to "capture the economic value of a performance").

Moreover, an Illinois court has explicitly acknowledged that a team's "right to sell tickets to whomever it chose" is "consistent with Illinois law" and compared Cubs' season tickets to "revocable licenses" that do not interfere with the Cubs' "legal possession and control over the property." *Soderholm v. Chi. Nat'l League Ball Club, Inc.*, 225 Ill. App. 3d 119, 124, 587 N.E.2d 517, 520 (1992). Other courts have similarly recognized a sports team's "valuable property right

… to sell[] licenses or rights" to its games. *See Nat'l Exhibition Co. v. Fass*, 143 N.Y.S.2d 767, 768, 777 (N.Y. 1955); *see also Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 490 (S.D.N.Y. 2012) (remarking on "the individual clubs' rights to sell tickets to sports fans"); *Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 378 & n.16 (D.C. Cir. 1982) (noting that "sports clubs did own a property interest in their games and could sell that right as they saw fit"); *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974) (noting "Cowboys concededly have a complete monopoly over" their football tickets). Thus, contrary to Defendants' unsupported contention, their sale of tickets to Cubs' games and events does implicate Cubs' property rights. To hold otherwise would strip any live performer, including all sports teams, of material rights.[4]

  ***Third***, Defendants tell a story that has no semblance to the facts of this case. Defendants portray themselves as innocent bystanders offering a "collateral" service in the shadow "created by the popularity of [the Cubs' business]." Mot. at 5. But Defendants do not operate a "collateral" service; their sole business is competing with the Cubs to sell tickets to Wrigley Field events. Compl. ¶ 27. Although Defendants claim their guests "pay for the privilege of being present on the property" and may meander onto the rooftop to catch an occasional glimpse of "whatever view there may be of neighboring Wrigley Field including any ongoing baseball games," Mot. at 8, their actual business—as alleged in the Complaint and conceded in their Answer—is selling tickets to specific events at Wrigley Field. Answer ¶ 27. Among other things, Wrigley View Rooftop is not

---

[4]  It would also, per Defendants' own argument, seriously threaten the Cubs' separate rights under copyright law. Defendants argue that, not only are they free to sell tickets to Cubs' games, but the Cubs have no ability to protect any of their rights against further misuse by Defendants' customers, claiming: "the Cubs cannot compel non-ticket holders that choose not to attend Wrigley Field to abide by the same contractual restrictions respecting what they witness live and in-person outside of Wrigley Field." Mot. at 6 n.2. Neither the law nor equity supports such an extreme position. *See Wis. Interscholastic Athletic Ass'n*, 658 F.3d at 624 ("[T]he producer of entertainment is entitled to charge a fee in exchange for consent to broadcast.").

open unless there is an event taking place at Wrigley Field, and patrons are required to leave 30 minutes after the event ends. Compl. ¶ 27; Ex. 2. Even the name of the business itself—***Wrigley View*** Rooftop—reveals its purpose.

Defendants' reliance on *National Football League v. Governor of State of Delaware*, 435 F. Supp. 1372 (D. Del. 1977), is misplaced for the same reason. In that case, the State of Delaware used the schedule and scores of NFL games to allow customers to gamble on which teams would win. *Id.* at 1376. Because the NFL "no longer ha[d] any expectation of generating revenue from further dissemination" when the defendant used the scores and game schedule, the court held that the NFL could not claim misappropriation of this information. *Id.* at 1377. As an Illinois court (which Defendants also cite) later explained, the court declined to find misappropriation because "[t]he games, not the scores, are the product that the N.F.L. offers for sale." *Bd. of Trade*, 439 N.E.2d at 534. But here, Defendants are not simply sharing publicly available scores; they are selling the games—the very "product" that the Cubs offer for sale.[5]

Contrary to defendants' characterizations, this is not a case where a neighbor and his dinner guests watch the game from a residential deck, or a nearby restaurant sees increased sales on gameday. Defendants run a parasitic, competing business of selling tickets to Cubs' events without consent or permission, as the Complaint clearly alleges. Accordingly, Defendants' motion on the misappropriation claim should be denied. *See Frontier Supply Chain Sols., Inc. v. Streamline Transp. Sols., LLC*, 2014 WL 3705349, at *3 (N.D. Ill. July 25, 2014).

---

[5]   *National Football League* is helpful for another reason. In support of its holding, the court likened the gambling business to "the sidewalk popcorn salesman" and "charter bus companies who generate profit from servicing those of plaintiffs' fans who want to go to the stadium." 435 F. Supp. at 1378. But none of those "collateral" industries compare to Defendants' business. Unlike the popcorn salesman or charter buses, who help attract fans ***to*** the stadium, Defendants are diverting fans ***away*** from the Cubs and towards their own business.

## II.    DEFENDANTS' MOTION ON THE CUBS' UNJUST ENRICHMENT CLAIM SHOULD BE DENIED

The Cubs also plausibly alleged a claim for unjust enrichment. "To plead such a claim, plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience." *Sharbaugh v. First Am. Title Ins. Co.*, 2007 WL 3307019, at *2 (N.D. Ill. Nov. 2, 2007) (internal citations omitted).

As with the misappropriation claim, Defendants mischaracterize the Cubs' unjust enrichment claim to argue that there is no "detriment" when sights and sounds leave Wrigley Field. Mot. at 10. To be clear, Defendants are not innocently "soak[ing] up the light, air, sounds, and smells" on their rooftop for their personal benefit, as made abundantly clear by Defendants' repeated complaints regarding their "blocked" view; Defendants are running a business that relies on repeatedly violating the Cubs' property rights by selling tickets to Cubs fans who want to watch games at Wrigley Field. *Id.* at 14. That is precisely what the Complaint alleges. The Cubs assert injury based on Defendants' "unlawful taking" of Cubs' property, which has "unjustly enriched" Defendants, who maintain the profits of their ticket sales without any contribution to the Cubs. Compl. ¶¶ 48-49. Thus, the Cubs plausibly allege all required elements.

Defendants argue that they owe no restitution because they are merely incidental "beneficiaries" of the Cubs' renovation of Wrigley Field, and never asked the Cubs "to continue playing baseball games" at the stadium where they have played for over a century—well before Defendants existed. Mot. at 11. Defendants assert that they can do whatever they please with their view into Wrigley Field because it is an "unrequested benefit" of their property ownership. *Id.* at 10-12 (citing Restatement (Third) of Restitution and Unjust Enrichment § 30 (2011)). Defendants are mistaken.

14

***First***, the Restatement exception for unrequested benefits envisions, in every illustration, a landowner "A" making a ***physical*** change that benefits the property of a landowner "B"—for example, by building a road easement that crosses both landowners' plots. Restatement (Third) of Restitution and Unjust Enrichment § 30, Illustration 2. Defendants' own cited authority applying the Restatement likewise involves ***tangible improvements*** to an unassuming beneficiary's property. Mot. at 12-13 (citing *Birchwood Land Company v. Krizan*, 115 A.3d 1009, 1010 (Vt. 2015) (plaintiff built access road and other infrastructure on defendant's land); *Ranquist v. Donahue*, 710 F. Supp. 1160, 1160 (N.D. Ill. 1989) (plaintiff made "construction improvements on the defendants' property")). In stark contrast, Defendants are being unjustly enriched by their use and sale of the Cubs' ***ongoing business operations***, not any physical improvements to Wrigley Field or the neighborhood. The Cubs allege that "Defendants have sold tickets to Cubs games for the 2024 season without compensating the Cubs for any of the costs required to, among other things, field a team and operate a ballpark." Compl. ¶ 46. Those operational costs are not the type that are subject to the "incidental beneficiary" exception.

***Second***, the actual benefit at issue—Defendants' sale of tickets to Wrigley Field events—is in no way "incidental" to the Cubs' activities at Wrigley Field. *See Birchwood*, 115 A.3d at 1014. To the contrary, the bases of the Cubs' unjust enrichment claim are Defendants' intentional and affirmative actions to divert revenue from the Cubs' business operations to themselves, including selling tickets, advertising online, and building bleachers to view live events at Wrigley Field. Thus, the incidental beneficiary doctrine is inapplicable.

## CONCLUSION

For the reasons set forth above, the Cubs respectfully request that the Court deny Defendants' Motion for Judgment on the Pleadings.

Dated: July 2, 2025

/s/ Martin L. Roth, P.C.
Martin L. Roth, P.C.
Kent Hayden
Nadia Abramson
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
Email: martin.roth@kirkland.com
        kent.hayden@kirkland.com
        nadia.abramson@kirkland.com

*Attorneys for Plaintiff Chicago Cubs Baseball Club, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CM/ECF system, which sends notification of such filing to all counsel of record.

*/s/ Martin L. Roth, P.C.*