**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) |
| | ) |
| Plaintiff, | ) Case No.: 24-cv-05086 |
| | ) |
| v. | ) |
| | ) |
| AIDAN DUNICAN, an individual; AND | ) |
| ROOFTOP BY THE FIREHOUSE, INC. d/b/a | ) |
| WRIGLEY VIEW ROOFTOP, | ) |
| | ) |
| Defendants. | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO**
**FEDERAL RULE OF CIVIL PROCEDURE 12(C)**
**AS TO COUNTS I AND II OF PLAINTIFF'S COMPLAINT**

## I.      Introduction

Plaintiff's opposition attempts to shoehorn its claims into case law respecting "hot news." But that is wrong.  Such "hot news" cases are distinguishable from the present case.  The facts here are simple and undisputed. Defendants own property, do not leave their property, and are entitled to enjoy their property while occupying their property.  They do not broadcast, record, display, copy, collect, or distribute anything.  They sell tickets to access their property where guests simply witness the world that is on full display from the privacy of Defendants' own property, which includes witnessing baseball games occurring in plain view at Wrigley Field.  If the Cubs do not like Defendants looking at what happens on the Cubs' property, then the Cubs can do whatever they want on **their** property to block the view.  But the Cubs cannot unilaterally dictate how Defendants utilize Defendants' own property.

## II.     Defendants Are Entitled to Full Enjoyment of Defendants' Own Property, and the Cubs Cite No Law to the Contrary

Plaintiff  correctly states that "the Chicago Cubs and Wrigley Field have been part of the fabric of Chicago for more than a century."  That assertion is only half the story; the "fabric" is the neighborhood of the city of Chicago, and it existed before the Cubs decided to set up shop in the heart of this city.  Now, having chosen to operate its business in a residential neighborhood, the Cubs cry foul when the properties surrounding the Cubs chosen base of operations are able to see onto the Cubs property.

The **exact** situation facing this Court was addressed by another court over 100 years ago. Indeed, the case of *Detroit Base Ball Club v. Deppert*, 61 Mich. 63, 64, 27 N.W. 856, 856 (1886) is shockingly similar.  There, the defendant lived in a house with a barn on a lot adjoining a parcel of land occupied by the Plaintiff. *Id*.  Plaintiff encircled its lot, dubbed "Recreation Park," with a high fence. *Id*.  Plaintiff was a member of the National Base Ball League, played baseball games

at Recreation Part, and charged customers to attend Recreation Park watch. *Id*. at 65.

Defendant built a grandstand on the roof of his barn and charged a minimal fee for people to come and watch baseball games being played at neighboring Recreation Park from the comfort of defendant's own property. *Id*. Plaintiff whined that it was unfair and that it was harmed because people would pay defendant's lower price to watch games from defendant's property rather than paying plaintiff to attend games at the actual Recreation Park property. *Id*. 66. Defendant responded that "that the premises belong to him; that the erections thereon have been examined by the board of building inspectors of the city, and pronounced safe and secure; that he uses his premises at times for the purposes of amusement, and as a means of revenue for the sale of refreshments; and that he has the legal right so to do, so long as he obeys the laws" and otherwise admitted to charging admissions to the grandstand during baseball games. *Id*. at 67.

The court rejected plaintiff's claims in whole, dismissed the case against defendant, and awarded the defendant costs. *Id*. at 67-68. It confirmed that the Detroit Base Ball Club had no right to control any property adjoining its own, and it noted that Deppert was not preventing people from attending Recreation Park or interfering with their ability to do so. *Id.* The court confirmed, "[c]ourts cannot limit the extent, up or down, to which a man may enjoy his property; and if he goes higher than his neighbor, so long as he does not interfere with the rights of others, or injure his neighbor, he subjects himself to no liability." *Id*. at 68.

That is exactly the case before this Court. There is no dispute—indeed Plaintiff never contends—that Defendant prevents anyone wishing to attend an event at Wrigley Field (i.e. occupy the physical premises of Wrigley Field), paying Plaintiff, and attending the event, from doing so. Plaintiff also does not contend that any of Defendants' customers actually attends any event on the property of Wrigley Field. Instead, all of Plaintiff's contentions are merely that persons are able

to witness events entirely form the property owned by Defendants ("Defendants sell tickets to *view* events at Wrigley Field" [Dkt. 68, p. 4]), a fact with which Plaintiff plays fast and loose by casually referring to such in its briefing as "tickets to Wrigley Field events" (see, Dkt. 68, p. 4, Section III, heading).[1]  Plaintiff's semantics aside, there is no dispute that all tickets sold by Defendants are solely for the privileged of occupying Defendants' property, and that no such tickets promise or provide anyone the right to admittance to Wrigley Field.  Defendants' customers are only able to see the sights from Defendants' property, which, of course, includes whatever view of Wrigley Field there may be due to Plaintiff's intentional lack of fencing or other enclosure.

Naturally, the situation facing this court does not arise often as there are limited opportunities for a baseball stadium owner to worry about its neighbor.  In one additional case citing *Detroit Base Ball Club* with favor, a court in New Jersey addressed a complaint asserting a right to privacy.  *See N.O.C., Inc. v. Schaefer*, 197 N.J. Super. 249, 259, 484 A.2d 729, 734 (Law. Div. 1984).  Again the court rejected the notion that one private entity could unilaterally impose restrictions on its neighbors use of that neighbor's property. *Id.* The *Schaefer* court noted "[a] landowner cannot assert by action a right of privacy from overlooking doors or windows in the absence of a statute, contract or grant protecting him. In the absence of statute, or of a contract or grant otherwise, a landowner has a right to place doors, windows, or openings overlooking adjoining land, and the adjoining owner has no action for an interference with his privacy, his only

---

[1] This is on full display in the Cubs rhetorical question of "does a professional sports team have an exclusive property right **to sell tickets to the games** and events that it spends millions of dollars to organize and host." Dkt. 68, p. 11.  Omitted from that question is that the Cubs tickets are for people to attend and occupy the physical space of Wrigley Field, a property the Cubs own, and see whatever they can see from that land—even if it means seeing into Defendants' property.  To that, Defendants agree. The Cubs are the only ones that can sell tickets for people to occupy their land and see whatever can be seen from that land, but in exactly same way, Defendants are solely allowed to sell tickets for people to come and occupy Defendants' land and see whatever is visible from Defendants' property.  Plaintiff's complaint confirms that the complained of acts occur solely on Defendants' own property.  See, Dkt. 1, ¶¶18-19 ("Wrigley View Rooftop charges fans to **watch** Cubs games, and other events at Wrigley Field, **from its rooftop**." emphasis added).

3

remedy being to build on his own land so as to obstruct the view." *Id*. at 260, citing 2 *C.J.S., Adjoining Landowners,* § 70.

Here Cubs cite no statute; there is none. They also cite no contract; there is none. Nor is there any "grant otherwise." And the Cubs have clearly decided not to build further fencing. That is their decision, and it provides them with no claim in equity or law against Defendants here.

## III.    Plaintiff's Case Law Does Not Support Its Novel Theory

Rather than focusing on what its claim actually asserts—witnessing a live event from one's own property—Plaitniff attempts to shoehorn its claim into the "hot news" exception of *International News Service v. Associated Press*, 248 U.S. 215 (1918). The law of "hot new" does not apply to Plaintiff's claims. As Plaintiff even points out, the Court in *International News* held that it was improper for one party to "tak[e] material that has been acquired by [another] as a result of organization and the expenditure of labor, skill, and money … and sell[] it as its own." 248 U.S. at 239. There, the court focused on the "acquisition and transmission of news" as requiring expense, skill, and effort to create the "material" (i.e. the facts gathered by correspondents, put into news articles, and published) whose value was strictly tied to the timeliness of the publication. *Id*. at 238 The Court found it improper for another to copy the factual information, and republish it as its own to a separate audience at a separate time in a separate geographic location. *Id*. Obviously, none of that is anything like what Plaintiff complains of in this case.

Here, there is no dispute that Defendants did not take possession of anything. There are no allegations that Defendants record anything, broadcast anything, repeat, relay, copy, or in anyway whatsoever reproduce anything of Plaintiff's. By contrast, Defendants and their customers occupy Defendants' property and witness whatever live events occur while occupying that private space. To fit into the "live news" exception, Plaintiff would have had to identify some newsworthy facts, shown that Defendants captured those facts, and shown that they relayed them to in manner that

4

competed with the timeliness of the original facts.  No such allegations (or facts) exist.

Plaintiff's other cases do not address the situation before this Court, where the only thing being complained about is a neighbor having customers witness the world from their private property.  The Cubs cite *Pittsburgh Athletic Co. v. KQV Broadcasting Co.*, 24 F. Supp. 490, 491 (W.D. Pa. 1938).  At one point the Cubs characterize the holding as "limiting neighboring rooftop landowner's use of property."  See, Dkt. 68, p. 9.  That is flat out wrong.  As the defendant's name KQV *Broadcasting* Co., suggests, the case was about broadcasting.  The defendant was "broadcasting play-by-play reports and descriptions of baseball games."  *Id*.  The defendant stated that it "secures the news thus broadcast and to be broadcast by it in the future from observers whom it has stationed at vantage points outside Forbes Field who can see over the enclosure of that field and observe the plays as they are made."  *Id*.  The Court **did not rule** that anyone was prohibited from witnessing games from outside of Forbes Field—i.e. what Defendants in this case are doing.  Instead, the Court found "the exclusive right **to broadcast** play-by-play descriptions of the games played by the 'Pirates' at their home field rests in the plaintiffs…That is a property right of the plaintiffs with which defendant is interfering **when it broadcasts**."  *Id*. at 492, *emphasis added*.  Thus, the defendant had no right to *record and redistribute* the events it witnessed to others that were not present to witness the events live and in real-time themselves.  The Cubs perpetually refer to "rights" when citing this case, but, not surprisingly, avoid referencing the fact that the court was referring to recording, broadcasting, and distribution rights.[2]  There was nothing in the *Pittsburgh*

---

[2] The Cubs cite a slew of other cases as support for its "rights" characterization of *Pittsburgh Athletic Co.* Dkt. 68, 11.  The Court will find that all of them similarly address recording rights. *See In re Nat'l Football League's Sunday Ticket Antitrust Litig.*, 933 F.3d 1136, 1144 n.1 (9th Cir. 2019) (commenting on "the right to telecast NFL games" and citing *Pittsburgh Athletic Co.,* holding proprietary rights **in broadcasting** games); *Bd. of Regents of Univ. of Okla. v. Nat'l Collegiate Athletic Ass'n*, 546 F. Supp. 1276, 1326 (W.D.Okla. 1982) (addressing the NCAA's control of "all forms of televising of football games" affirming that sports teams "are entitled to a declaratory judgment affirming the fact that the right to sell their football games **for telecast** is a property right belonging to the plaintiffs.").

*Athletic* opinion about witnessing live events from property not owned by the plaintiff.

Plaintiff cites *Capitol Recs., Inc. v. Spies*, 130 Ill. App. 2d 429, 429, 264 N.E.2d 874, 874 (Ill. App. Ct. 1970), another case dealing with recordings. There, as even the Cubs acknowledge, the plaintiff sought to enjoin the defendant from "from **making and selling tapes** of Capitol's recordings." *Id. emphasis added*. That is not the situation before this Court. The Cubs never allege that Defendants made any recording or that Defendants sell any recordings. *Capitol Records* confirms that it is the recordings that are the property, and it says nothing about witnessing whatever live events may be seen from private property.

The Cubs cite *Bd. of Trade of City of Chicago v. Dow Jones & Co.*, 108 Ill. App. 3d 681, 686 (1982), aff'd, 98 Ill. 2d 109 (1983), which was a declaratory judgment action where the relief sought was a declaration that "[b]y offering the commodity futures contract described in paragraph 4, the Board of Trade will not violate any legal or proprietary right of Dow Jones." *Id*. The case focused on the burden of proof for trying to address a claim that was pleaded as a negative statement and who would be responsible for trying to prove the negative. *Id*. 686-687. The pertinent question was whether the agreement between the parties gave the Board the right to redistribute index averages when the agreement stated there would be no redistribution within 24 hours of the receipt of such news. *Id*. at 688. Once again, the case before this Court is nothing like what the court faced in the case cited by the Cubs. Here, there is no contract, no recording, no rebroadcast, and no distribution. There is only witnessing the plain view from private property.

Another case cited by Plaintiff is *Zacchini v. Scripps-Howard Broadcasting Co.,* 433 U.S. 562, 562 (1977), another broadcasting case. There, without Zacchini's consent, the defendant "videotaped [plaintiff's human cannonball act] in its entirety at a county fair…and [broadcast it] on a television news program later the same day." *Id*. The court found that it was the recording

6

and broadcasting that diminished the value of Plaintiff's act—not simply the witnessing of it live and in person. *Id*. at 575, 578. Once again, the *Zacchini* case is readily distinguishable from this case as it relates to the recording and broadcasting of an event, not the witnessing of live events.

The Cubs also relied on the inapposite case of *Wisconsin Interscholastic Athletic Ass'n v. Gannett Co.*, 658 F.3d 614, 615 (7th Cir. 2011). There, Gannet decided to stream four WIAA tournament games without either obtaining consent or paying a licensing fee for the broadcast. *Id*. The entire case was literally built on broadcast licensing. It has no relevance to the present case.

Other broadcasting cases sprinkled in by Plaintiffs include *Nat'l Exhibition Co. v. Fass*, 143 N.Y.S.2d 767, 768 (N.Y. 1955), where the court prohibited an individual from listening to play-by-play, copying the information, and "sending out simultaneous teletype reports of the games to radio stations for immediate rebroadcast," *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 490 (S.D.N.Y. 2012), where the court addressed anticompetitive claims by broadcasters over contract rights for broadcasting and blacking-out games, and *Nat'l Ass'n of Broadcasters v. Copyright Royalty Tribunal*, 675 F.2d 367, 371 (D.C. Cir. 1982), where the court addressed royalty payments for "retransmission of certain copyrighted programming." Once again, all of those cases deal with copying and transmission, and have nothing to do with simply witnessing events in real-time from private property, and without copying, recording, rebroadcasting, or transmitting what is witnessed. In fact, none of those opinions ever even uttered the word "misappropriation."

The Cubs' opposition goes further afield in its reliance on game-day ticket sales cases. *See* Dkt. 68, p. 11-12. In each of these cases, the question is whether a sports team is required to sell tickets to particular customers. *See Soderholm v. Chi. Nat'l League Ball Club, Inc.*, 225 Ill. App. 3d 119, 120, 587 N.E.2d 517, 518 (1992) (Plaintiff sought specific performance requiring

defendant to sell him season tickets); *Driskill v. Dallas Cowboys Football Club, Inc.*, 498 F.2d 321, 323 (5th Cir. 1974) (Plaintiff brought and anti-trust case to avoid paying for pre-season tickets along with regular season tickets in a season ticket package). This sale of tickets to attend the property owned by a sports team and witness the game on the sports team's property (along with any the permissions granted or restrictions imposed while present on that property) do not affect what Defendants can do on their own property. Contrary to Plaintiff's footnote 4, Defendants do not "strip" anything from Plaintiff. Once again, Plaintiff's argument focuses on copyright matters, including *broadcasting* rights. Plaintiff does not accuse Defendants of copying anything or broadcasting anything. The only activity Defendants and its patrons engage in is sitting on Defendants' property witnessing everything that can be seen and heard from Defendants' own property in real-time. Obviously, Defendants must abide by copyright laws while doing so, and Plaintiff has not contended that Defendants in any way violate any copyright statute.

The Cubs make only a minor effort to distinguish one case relied on by Defendants. The Cubs criticize Defendants' reliance on authority that controls the right of a private entity to enjoy its property in any way it sees fit by claiming that the case is about the Cubs property. As established above, this case is not about any acquisition and use of Cubs property. There are no recordings, copies, distributions, retellings, or any other type of capturing of anything alleged in the complaint. There is only complaining about what Defendants can witness live and in person while they and their customers occupy Defendants' own property. As much as the Cubs complain about *United States v. Causby*, 328 U.S. 256, 260-61 (1946), that case remains foundational and applicable law today. Plaintiff cites the Court's statement that the doctrine of ownership extending to the universe "has no place in the modern world" but omits the Court's further explanation that it was merely acknowledging that the government has the right to fly planes in the stratosphere

8

without worry of trespassing on the rights of those 30,000 ft. below. *Id*. at 264. Just as has always been the law, Defendants are entitled to build on their property, occupy their property, and utilize their property to its fullest extent, all while staying within the boundary lines of what they own. The Cubs, a private entity, have no say in how Defendants utilize their property.

## IV. This Court Should Dismiss the Unjust Enrichment Claim

Plaintiff's unjust enrichment claim fails because all of the Cubs complaints and arguments are based on the fact that Defendants operate solely on Defendants' own property, and strictly within the confines of what people are able to see and hear while present on Defendants' property. There are no recordings, no copies, no broadcasts. There are just people witnessing life in real-time from Defendants' private property.

The Cubs "physical change" argument is belied by the admitted facts. The Cubs clearly made physical improvements to their plot of land, and host baseball games on that land. The Cubs made those decisions. The Cubs chose to build their stadium in a residential neighborhood of Chicago and have perpetually reinforced the "friendly confines" neighborhood atmosphere of having a ballpark in a neighborhood. They chose to engage in their 1060 project rather than move.

Defendants did not ask the Cubs to do anything. Indeed, had the Cubs wanted Defendants to pay for improvements to Plaintiff's property, the Cubs could have provided Defendants with a contract giving Defendants something valuable in exchange for the assistance. The Cubs chose not to do so, and even if they had, Defendants would have had the right to reject the contract if the terms were not to Defendants' liking. That is the fundamental essence of the Restatement. The Cubs cannot unilaterally demand compensation for what Defendants do on Defendants' property simply because the Cubs chose to improve its property. The Cubs are free to stop playing at Wrigley Field, erect fencing, or take any other action on their property to make full use of it however they see fit—including continuing to engage in commercial activity in accordance with

applicable governmental ordinances—without conferring or compensating Defendants in any way. Defendants are entitled to do the same thing. The law treats all parties equally. It does not matter that the Cubs are a billion dollar business and Defendants are a small business and private person. Both are entitled to use their property however they see fit without compensation to the other.

The Cubs also mischaracterize *Birchwood Land Co. v. Krizan*, 2015 VT 37, ¶ 4, 198 Vt. 420, 424, 115 A.3d 1009, 1011 (2015). There, a neighbor built infrastructure improvements that resulted in Defendants having access to a public road, sewer and water. *Id.* at 1010-1011. At no point did the court find that the Plaintiff built anything "on defendant's land" as the Cubs suggest. Rather, the critical issue was that the plaintiff paid for improvements that the plaintiff wanted for plaintiff's benefit, and defendant was entitled to enjoy whatever ancillary benefit such improvements conferred. That included Defendant's right to build on and enhance its own property. The same is true here. Plaintiff made a unilateral decision to undertake improvements and operate its business at its current location next door to Defendants. The law does not require the improvement to be to anything the Defendants physically owns, and the law specifically contemplates that Defendants will improve their own property solely for their own benefit in light of the improvements made by Plaintiff.

## V.    Conclusion

It is not a misappropriation or unjust enrichment to experience the world from Defendants' property. Defendants are entitled to the full enjoyment of their property, including selling tickets for customers to experience the property in real-time, and view anything that can be seen from Defendants' property in real time, including all activities occurring on any neighboring property, all without paying Plaintiff. The applicable laws protect Defendants' right to enjoy their property in real-time. They do not confer any right on Plaintiff to unilaterally demand payment from Defendants for such enjoyment. Plaintiff's claims should be dismissed.

10

Dated: June 16, 2025

Respectfully submitted

*/s/ Matthew De Preter*
Matthew De Preter
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. Suite 2800
Chicago, IL 60606
Tel.: 312-755-3153
cdepreter@agdglaw.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 16, 2025 a true and correct copies of the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF System, which will provide electronic notification of such filing to all attorneys of record.


*/s/ Matthew De Preter*
Matthew De Preter
One of the Attorneys for Defendants