**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 24-cv-05086 |
| | ) | |
| v. | ) | Honorable Sharon Johnson Coleman |
| | ) | Magistrate Judge Heather K. McShain |
| AIDAN DUNICAN, an individual; and | ) | |
| ROOFTOP BY THE FIREHOUSE, INC. | ) | |
| d/b/a WRIGLEY VIEW ROOFTOP, | ) | REDACTED |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
COMPLIANCE WITH WRITTEN DISCOVERY AND TO RECLASSIFY PLAINTIFF'S
"ATTORNEYS' EYES ONLY" DESIGNATIONS**

**Contents**

I.     INTRODUCTION ................................................................................................. 1

II.    COMPLIANCE WITH L.R. 37.2 .................................................................... 1

III.   BACKGROUND FACTS ................................................................................. 3

IV.   MOTION TO COMPEL ................................................................................. 5

      A.    Production of Documents Related to the Partial Obstruction of the View from Defendants' Rooftop Business into Wrigley Field. ....................................... 5

      B.    Plaintiff's Improper Redaction of Documents. ...................................................... 8

V.    ATTORNEYS' EYES ONLY DESIGNATIONS ........................................... 13

VI.   DEFENDANTS HAVE NOT WAIVED DISCOVERY COMPLIANCE ...................... 15

VII.  Conclusion ....................................................................................................... 20

## Table of Authorities

### Cases

*Acosta v. Target Corp.*,
    281 F.R.D. 314 (N.D. Ill. 2012) .................................................................. 10

*Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*,
    145 F.R.D. 84 (N.D.Ill.1992) ...................................................................... 9

*Baxter Travenol Labs., Inc. v. Abbott Labs.*,
    No. 84 C 5103, 1987 WL 12919 (N.D.Ill. June 19, 1987) ................................... 9

*Bierk v. Tango Mobile, LLC*,
    2021 WL 1675766 (N.D. Ill. April 28, 2021) ................................................... 17

*Blanchard v. EdgeMark Financial Corp.*,
    192 F.R.D. 233 (N.D. Ill. 2000) ................................................................... 18

*Burden–Meeks v. Welch*,
    319 F.3d 897 (7th Cir.2003) ......................................................................... 9

*Denius v. Dunlap*,
    209 F.3d 944 (7th Cir.2000) ......................................................................... 9

*Equity Residential v. Kendall Risk Mgmt., Inc.*,
    246 F.R.D. 557 (N.D.Ill.2007) .................................................................... 10

*Heriot v. Byrne*,
    257 F.R.D. 645 (N.D.Ill.2009) .................................................................... 10

*In re Aircrash Disaster Near Roselawn, Inc. Oct. 31, 1994*,
    172 F.R.D. 295 (N.D. Ill. 1997) .................................................................... 6

*In re Grand Jury Proceedings*,
    220 F.3d 568 (7th Cir.2000) ......................................................................... 9

*In re Sulfuric Acid Antitrust Litigation*,
    231 F.R.D. 331 (N.D. Ill. 2005) ................................................................... 18

*Loctite Corp. v. Fel–Pro, Inc.*,
    667 F.2d 577 (7th Cir.1981) ........................................................................ 10

*Novelty, Inc. v. Mountain View Mktg.*,
    265 F.R.D. 370 (S.D. Ind. 2009) ................................................................... 6

*Packman v. Chicago Tribune Co.*,
    267 F.3d 628 (7th Cir. 2001) ....................................................................... 17

*Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC,*
    80 F.Supp.3d 829 (N.D. Ill. 2015) ................................................................. 4

*United States v. Defazio,*
    899 F.2d 626 (7th Cir.1990) ......................................................................... 9

*United States v. Frederick,*
    182 F.3d 496 (7th Cir.1999) ....................................................................... 10

*Upjohn Co. v. United States,*
    449 U.S. 383 (1981) ................................................................................. 9, 13

## Other Authorities

15 U.S.C. §1117(a) ...................................................................................... 13

Fed.R.Civ.P. 26(b)(3) (1970 Committee Notes) .......................................... 10

## I. INTRODUCTION

Defendants, Aidan Dunican and Rooftop By the Firehouse, Inc. (collectively, "Defendants"), move for the following relief: 1) to compel Plaintiff to comply with Defendants' request to produce number 4; 2) to remove certain redactions made to documents produced in discovery; and 3) to reclassify certain documents produced as "Highly Confidential Attorneys Eyes Only" to "Confidential." In support, Defendants state as follows:

## II. COMPLIANCE WITH L.R. 37.2

After Plaintiff acknowledged that its initial discovery responses were deficient, it served supplemental discovery responses including documents Bates numbered CUBS_000303-1740 on July 25, August 1, August 4, and August 5, 2025. In total, Plaintiff provided Defendants with over 80% of its document production (1,438 out of 1,740 total pages of documents) between July 25, 2025, and August 5, 2025.

The parties held remote video discovery conferences addressing the deficiencies in Plaintiff's discovery compliance on June 11, 2025, July 21, 2025, July 28, 2025, and July 31, 2025. During the conferences, Plaintiff's counsel agreed to discuss Defendants' discovery issues with appropriate representatives of Plaintiff. During the July 31, 2025 conference, Plaintiff's counsel for the first time disclosed that Plaintiff was willing to produce additional documents but would only do so if marked for Attorneys' Eyes Only and asserted the parties would need an amended confidentiality order tendered by Plaintiff. Defendants' counsel objected to Aidan Dunican, a named Defendant, being precluded from his right to review all documents produced by Plaintiff.

The Court previously set August 11, 2025, as the final deadline for the parties to complete fact witness depositions. Due to the timing of Plaintiff's document production, and to comply with the witness completion deadline, Defendants were forced to proceed with the depositions before they could present a motion to obtain resolution of their issues regarding Plaintiff's deficient

discovery compliance.

Defendants requested that Plaintiff agree to a short extension of the discovery period purely to complete depositions due to preplanned college visits and interviews scheduled by Mr. De Preter and his son the week of August 4, and the number of depositions to be completed. Plaintiff refused. Defendants complied with the August 11, 2025, deadline by scheduling each of the depositions they were taking and providing dates for each of their witnesses for depositions all to occur prior to the deadline. Defendants took the deposition of Plaintiff's employee Crane Kenney on August 6, 2025 (the day after Plaintiff completed its document production). Plaintiff took the combined individual and Rule 30(b)(6) deposition of Mr. Dunican on August 7, 2025. Defendants took the combined individual and Rule 30(b)(6) deposition of Plaintiff's employee Jonathan Greifenkamp on August 8, 2025. Plaintiff took the combined individual and Rule 30(b)(6) deposition of Defendants' representative Donna Kane on August 11, 2025.

However, Plaintiff did not comply with the August 11, 2025 deadline. Plaintiff scheduled the combined individual and Rule 30(b)(6) deposition of Defendants' employee Jennifer Borkowski on August 13, 2025. Plaintiff delayed the deposition of its employee Michael Lufrano until August 21, 2025. Defendants agreed to the tardy depositions to avoid a needless discovery dispute.

After all depositions were completed, other than that of Mr. Lufrano, Defendants' counsel initiated another remote video discovery conference with Plaintiff's counsel on August 15, 2025, regarding each of the issues raised in this Motion. During the conference, Plaintiff's counsel again indicated that he would consult with the appropriate representatives of Plaintiff regarding the outstanding discovery issues.

In a final effort to resolve the parties' discovery differences, Defendants' counsel sent a

detailed e-mail to Plaintiff's counsel on August 18, 2025, outlining the pending discovery issues and reiterating Defendants' position on the issues. The parties exchanged follow-up e-mails through August 28, 2025. This e-mail thread is attached hereto as Exhibit A.

Based on the foregoing facts, Defendants' attorneys certify that after their good faith attempts to resolve the parties' discovery differences in four remote video conferences and detailed written communications, they were unable to reach an accord with Plaintiff's counsel on the issues raised in this Motion. Defendants seek the following relief: 1) an order compelling Plaintiff to produce documents and information that relates to its conduct in partially blocking the view into Wrigley Field from the rooftop business operated by Defendants; 2) an order compelling Plaintiff to produce unredacted versions of certain internal emails strings (namely, those of Exhibit G); and 3) an order reclassifying documents produced by Plaintiff as "highly confidential attorneys' eyes only."

## III.    BACKGROUND FACTS

For many years, over a dozen businesses located across the street from Wrigley Field have operated rooftops businesses where they charge for admission, products and services as their patrons who purchase tickets or attend events such as weddings and corporate outings have the ability to view baseball games and other events taking place at Wrigley Field. In 2002, the entity that then owned the Chicago Cubs filed suit against several rooftop businesses, including the business operated by Defendant Aidan Dunican, seeking to prevent the operation of the rooftops. (Lawsuit I). Lawsuit I was resolved by a settlement agreement that included the granting of 20-year licenses to the rooftop businesses. In the settlement agreement, the Cubs provided significant benefits to the Defendants, including an agreement by the Cubs not to obstruct the rooftop's views into Wrigley Field except in limited circumstances and co-branding and marketing agreements with the defendants by which not only would the defendants be able to promote their relationship

with the Cubs, but the Cubs would also promote the rooftops in their marketing materials and on TV and other broadcasts. The settlement agreement did not prohibit any of the rooftop businesses from continuing to operate after the December 31, 2024 termination date of the agreement.

Plaintiff's corporate representative admitted at deposition that after the 2009 sale of the Cubs to its current ownership entity, the new management determined for several reasons that the settlement agreements were a ███████████ See Transcript of Johnathan Greifenkamp Deposition, attached as Exhibit B, 31:13-32:1; 33:10-33:18; 34:6-35:15. Shortly after ownership of the Cubs changed hands to the Plaintiff, the new Cubs entity sought to get around following provisions of the settlement agreement. The Cubs submitted plans to the City of Chicago to install a video board and other structures to obstruct the view from certain of the rooftops into Wrigley Field. Certain rooftop owners located outside of Wrigley Field's right field side filed suit against the Cubs in part seeking injunctive relief to prevent the Cubs from obstructing their views. (Lawsuit II). After a hearing, the court in Lawsuit II denied the plaintiff's requests for injunctive relief based on the court's finding that the plaintiffs had an adequate remedy at law in the form of claims for money damages. The ruling on the plaintiffs' requests for injunctive relief, which includes a history of the proceedings that led to the Lawsuit I settlement agreement, is reported at *Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC*, 80 F.Supp.3d 829 (N.D. Ill. 2015).

Between January 9, 2015 and February 1, 2017, 12 of the rooftop businesses sold out their interests to an entity affiliated with Plaintiff. See Plaintiff's Supplemental Interrogatory responses, attached as Exhibit C, ¶ 7. Notably, Plaintiff did not block the views into Wrigley Field from the rooftop businesses that were acquired by the affiliated entity.

In late 2023 and into early 2024, Plaintiff and Defendants discussed a new licensing agreement for Defendants' rooftop business. Plaintiff's proposed agreement, which was based on

gross revenue, sought to nearly double the royalty Defendants would be required to pay Plaintiff, thus providing Plaintiff with most if not all profits from Defendants' rooftop business. Defendants offered a new agreement that included an increase in the royalty to Plaintiff that would have allowed Defendants' rooftop to continue to operate profitably. But Plaintiff's offer was "take it or leave it." Plaintiff did not respond to Defendants' counter proposal.

In an effort to convince Defendants to accept Plaintiff's proposal, Plaintiff's representative represented to Mr. Dunican that the other rooftop businesses were paying the identical royalty that Plaintiff insisted on receiving from Defendants, and that such a rate was the accepted market rate.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████

## IV. MOTION TO COMPEL

### A. Production of Documents Related to the Partial Obstruction of the View from Defendants' Rooftop Business into Wrigley Field.

Plaintiff claims that Defendants are wrongfully operating their rooftop business by charging customers to view games and events in Wrigley Field. Plaintiff has taken the position that customers' only purpose in visiting Defendants' rooftop business is to watch Cubs games or other events at Wrigley Field; thus, according to Plaintiff, if the view into Wrigley was blocked there would be no reason for customers to visit the rooftop and no damages suffered by Plaintiff. Plaintiff, however, by its own reasoning has allowed Defendants' business to continue to operate by only partially obstructing the view into Wrigley Field. Plaintiff is seeking Defendants' ongoing

profits as part of its damages in this case while allowing Defendants to generate such profits.

A key issue in this case is why Plaintiff has not fully blocked Defendants' view into Wrigley Field.  This issue is relevant to the overall basis of Plaintiff's claims, whether it even believes Defendants profitably operate their business only because of the view into Wrigley Field, and Defendants' "failure to mitigate damages" affirmative defense.  Thus, Defendants served document requests on this topic.  (Exhibit D, Doc Req. 4).[1]  Defendants also included in their Rule 30(b)(6) deposition notice the following topics:

- The reasons You had structures, extensions or other materials added to Wrigley Field that partially obstructed the view into Wrigley Field from Defendants' place of business, and

- The reasons you did not have structures, extensions or other materials added to Wrigley Field that fully obstructed the view into Wrigley Field from Defendants' place of business.

Jonathan Greifenkamp was Plaintiff's designated Rule 30(b)(6) witness.  Through 19 objections Plaintiff's counsel made to the "form" of the questions on this topic,[2] Mr. Greifenkamp made clear ██████████████████████████████████████ ████████████████████.  (Exhibit B, pp. 135-143).  Mr. Greifenkamp testified that ██ ██████████████████████████████████████████████████████████

---

[1] Pursuant to a meet and confer, the time frame of Req. No. 4 was limited to 2023-present. Defendants further raised the impropriety Plaintiff's boilerplate objections and requested they be withdrawn. *See In re Aircraft Disaster Near Roselawn, Inc. Oct. 31, 1994*, 172 F.R.D. 295, 307 (N.D. Ill. 1997) (When a party raises objections to discovery requests, the objecting party bears the burden to explain **precisely** why its objections are proper given the broad construction of the federal discovery rules.) *see also Novelty, Inc. v. Mountain View Mktg.*, 265 F.R.D. 370, 375 (S.D. Ind. 2009) (" 'general objections' made without elaboration, whether placed in a separate section or repeated by rote in response to each requested category, are not 'objections' at all—and will not be considered").  Plaintiff said it was not relying on such objections, but also would not withdraw them.
[2] Plaintiff's counsel included objections to "foundation" along with the form objections, which did not make sense because Plaintiff had the obligation to educate the witness on the deposition topics and therefore Defendants were not required to lay a foundation for the corporate representative's testimony.

6

██████████████. *Id.* p. 140.  This line of questioning included the following exchanges (with objections omitted):

> Q.   The Cubs are claiming that the view we are looking at in the photograph that's RBTFH429, is a misappropriation of the Cubs property.  Correct?
>
> A.   ████████████████████
>
> █   ████████████████████████████████████████
>
> █   ████████
>
> Q.   If the screens were blacked out, you couldn't really watch the baseball game, correct?
>
> A.   ██████████████████
>
> Q.   You don't know any reason why the Cubs didn't just do that if they felt that Mr. Dunican was infringing on their rights, exclusive right to charge to watch baseball games?
>
> A.   ████████████████

*Id.* pp. 139, 143.

Mr. Greifenkamp made clear under questioning by Plaintiff's counsel that ██████████ ████████████████████████████████████████████████████████ ██████████████████████ Mr. Greifenkamp testified that ██████████████████ ██████████████████████ *Id.* p. 204.

Mr. Lufrano's deposition proceeded on August 21, 2025.  He testified that ████████████ ████████████████████████████████████████████████████████ ████████ Although Mr. Lufrano is an attorney and testified that he was ██████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

7

████████████████████████. (Michael Lufrano Transcript of Deposition, attached hereto as Exhibit E, 108:17-110:1; 112:16-112:24).

Plaintiff has stonewalled Defendants' efforts to find out the complete story behind Plaintiff's failure to mitigate its damages by stopping Defendants' alleged misappropriation. Plaintiff has produced almost no communications, internal documents, plans, documents submitted to any governmental authority, information regarding proceedings before any governmental authority or approval issued by a governmental body. Mr. Greifenkamp was not properly prepared for his Rule 30(b)(6) deposition. It is implausible that nobody within the entire Cubs organization ever sent or received any e-mails or letters, took meeting notes or otherwise made record of discussions respecting the construction of a huge modification to the left field portion of the stadium meant to partially obstruct Defendants' view. See Exhibit F, RBTFH000727-728.

One thing is clear: Plaintiff possesses documents that will shed light on the facts and circumstances surrounding the construction of the structure and why Plaintiff has not completely blocked the view into Wrigley Field from Defendants' rooftop. Plaintiff should be ordered to provide all information on this topic within its possession or control.

**B.    Plaintiff's Improper Redaction of Documents.**

Plaintiffs produced only a handful of email strings. Exhibit G contains representative versions of these emails. Defendants move this Court to compel the withdrawal of the redactions and production of unredacted versions of the emails in Exhibit G. To facilitate consideration of this Motion, Defendants request that (either voluntarily or by order of this Court) unredacted copies of the emails be provided to the Court by Plaintiff for an *in camera* review. Of the 30 pages of Exhibit G, Plaintiff's privilege log only addresses CUBS00202, 215, 217, 69, 110, 143, 63, 55,

and 109.[3]  Plaintiff claims that the redactions are either attorney client communications or work product.[4]

The attorney-client privilege prohibits the compelled disclosure of "confidential communications between a client and an attorney for the purpose of obtaining legal advice." *Denius v. Dunlap,* 209 F.3d 944, 952 (7th Cir.2000).  Not all communications between an attorney and client are privileged; "the privilege is in derogation of the search for the truth and, therefore, must be strictly confined." *In re Grand Jury Proceedings,* 220 F.3d 568, 571 (7th Cir.2000). The privilege adheres "only if [the communications] constitute legal advice, or tend directly or indirectly to reveal the substance of a client confidence." *United States v. Defazio,* 899 F.2d 626, 635 (7th Cir.1990).  "The party seeking to invoke the privilege bears the burden of proving all of its essential elements," *id.,* and "each of these elements must be established as to each document, as the mere existence of an attorney-client relationship is not sufficient to cloak all communications with the privilege." *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.,* 145 F.R.D. 84, 86 (N.D.Ill.1992).

The attorney-client privilege has long been understood to protect corporate clients and counsel. *Upjohn Co. v. United States,* 449 U.S. 383, 389 (1981). However, the privilege is limited to situations in which the attorney is acting as a legal advisor—business and financial advice are not protected. *Burden–Meeks v. Welch,* 319 F.3d 897, 899 (7th Cir.2003). "Where a document is prepared for simultaneous review by legal and non-legal personnel and legal and business advice is requested, it is not primarily legal in nature and is therefore not privileged." *Baxter Travenol Labs., Inc. v. Abbott Labs.,* No. 84 C 5103, 1987 WL 12919, at *5 (N.D.Ill. June 19, 1987); *see*

---

[3] See Exhibit I, PrivlogIDs 0003, 5, 6, 11, 22, 29, 39, 46 and 47, respectively.
[4] Plaintiff produced some of the documents with lesser redactions.  These are included as Exhibit H.  The red numbers included are cross-references to corresponding originally produced documents of Exhibit G.

*also United States v. Frederick,* 182 F.3d 496, 501 (7th Cir.1999) (holding that "a dual-purpose document—a document prepared for use in preparing tax returns and for use in litigation—is not privileged."). The increasing inclusion of attorneys in business discussions and decisions has "increased the burden that must be borne by the proponent of corporate privilege claims relative to in-house counsel. The burden of persuasion on all elements of claims [of] privileges is exclusively the proponent's." *Acosta v. Target Corp.*, 281 F.R.D. 314, 322 (N.D. Ill. 2012).

Materials created in the ordinary course of business which may have the incidental effect of being helpful in litigation are not privileged under the work product doctrine. Fed.R.Civ.P. 26(b)(3) (1970 Committee Notes); *Heriot v. Byrne,* 257 F.R.D. 645, 663 (N.D.Ill.2009) (citing *Equity Residential v. Kendall Risk Mgmt., Inc.,* 246 F.R.D. 557, 564 (N.D.Ill.2007)). As with the attorney-client privilege, documents that are not primarily legal in nature are not privileged under the work product doctrine. *See Loctite Corp. v. Fel–Pro, Inc.,* 667 F.2d 577, 582 (7th Cir.1981) ("Only where the document is primarily concerned with legal assistance does it come within [attorney-client or work product] privileges.")

Here, the redacted portions of the routine company emails do not constitute "attorney-client" communications nor are they "work product." For example, the very first document is a one-line email from Crane Kenney (Exhibit G, CUBS00055):



Plaintiff asserts the approximately two inches of redacted information is attorney client privileged and work product of its outside counsel, Kirkland and Ellis. See Exhibit. J, PrivLog ID 46. That assertion is highly dubious, particularly in that none of the subsequent replies have

anything to do with claims, strategies, or legal matters at all.

Similar messages from Crane Kenny included CUBS0064 (Exhibit. H):



Another example is CUBS00066 (Exhibit G):



Since the meet and confer, Plaintiff withdrew that redaction which merely ████████████

(compare, Exhibit. H, CUBS_00066l, Exhibit. I, CUBS_01714).

There is virtually no chance that Mr. Kenny's minimal comments reflect any "request for legal advice" or information prepared by counsel in anticipation of litigation. Instead, these comments and the other redactions in the email strings are all reflective of general business discussions relating to negotiations of a potential new agreement with Mr. Dunican. Indeed, in the email string of CUBS00063-68 (Exhibit G), Plaintiff employees are discussing ███████

██████████████████████████ For example, an email on December 6, 2024 at 4:31 PM states

██████████████████████████

██████████████████████████

████████████. *Id.* This instruction to ████████ precipitated

another response of ████████████████ CUBS00067, followed

by a string of totally redacted and almost totally redacted responses from Plaintiff's employees. *Id.* CUBS00064-67. None of these include any outside counsel. They appear to just be business discussions. In fact, Plaintiff withdrew some of its original redactions (the response on CUBS00068 and CUBS00067, which revealed that Plaintiff's personnel were discussing ████████

████████████████████████████

    In November of 2023, Plaintiff's employees had additional business discussions about ██████████████████████████ See Exhibit G, CUBS00069-71. The conversations involved communications Michael Lufrano had with Mr. Dunican and appears to address ████████████████

    Another conversation occurred around December 1, 2023. Exhibit G, CUBS_000110-113. Here, a representative of Kirkland provides ███████████████████████

████████████████████████████

████████████████ Crane Kenny responded in typical fashion:



Overall, due to the redactions, there is no way to understand ██████████████████

████████████████ This information is important because it will likely support Mr. Dunican's position that Plaintiff's representatives misrepresented to him the terms of the other rooftops' agreements in an effort to dupe him into accepting the terms of the new agreement Plaintiff was offering to him.

    The identified redacted documents appear to be mere business discussions that may happen to involve inside counsel—not requests for legal advice—and that does not transform the

interspersed comments into privileged attorney client communications. *Upjohn*, 449 U.S. at 393, 101 S.Ct. 677. The redline redactions also do not appear to be "work product" generated specifically in response to potential litigation as they are just comments included in general business communications about business related matters such as the terms of a new agreement with Defendants. Mr. Lufrano testified that ███████████████████████ ████████████████████████████████████████████ ██████████████████████ Exhibit E, 24:14-24:22; 25:5-26:4.

Last, while on August 28, 2025 Plaintiff produced an email string regarding ████████ ██████████████████████████████ Exhibit. I, CUBS_01745. The page is ██████████████████████. It is not privileged and has not been included in Plaintiff's privilege log.

## V.    ATTORNEYS' EYES ONLY DESIGNATIONS

Plaintiff's Attorneys' Eyes Only designations of the agreements with the affiliated rooftop businesses and the two other surviving independent businesses are an attempt to hamstring Defendants' defense of this lawsuit and to deny Mr. Dunican the fundamental right to participate in and understand the merits of this case and the claims brought against him personally. Plaintiff has asserted damage claims for trademark infringement and misappropriation. It has claimed that the view into Wrigley Field has value, and that Defendants must compensate Plaintiff for that value. It should not escape this Court's notice that the damages sought by Plaintiff are disgorgement damages that are entirely equitable in nature and therefore require consideration of the totality of circumstances to assess the equity of any possible award. *See* 15 U.S.C. §1117(a) (damages are "subject to the principles of equity").

The agreements between Plaintiff and the affiliated rooftop businesses are essential evidence in this case for several reasons. The agreements will provide market price or arm's length

negotiated terms for the ongoing operation of rooftop businesses. The agreements pertain to the equity of any damages at least because agreements with the affiliated rooftop businesses establish that Plaintiff in bad faith tried to dupe Defendants into entering into an agreement that essentially would have had them operate their business for Plaintiff's sole or primary benefit. The agreements also address whether the affiliated entities that continue to operate their businesses pursuant to licensing agreements retained the ability to assert the right to operate their business without a license after the expiration or termination of the agreements (they do). The terms of the agreements will establish that Plaintiff has attempted to impose more oppressive conditions for a new licensing agreement on Defendants than what they required in the licensing agreements with the other rooftop businesses. Similarly, the financial data produced by Plaintiff is directed to an allegation that the Cubs's "good will" has been damaged and that Mr. Dunican must compensate for that.

However, Mr. Dunican is currently unable to assess the nature of any potential equitable award, and Counsel is prohibited from discussing the specifics of it with him, because Mr. Dunican cannot see the evidence in the case. Mr. Dunican is also unable to properly prepare for examination and cross-examination at trial. During the course of the failed negotiation, Cubs representatives made a number of representations respecting royalty rates, agreement terms, other rooftops, all trying to push Defendants to accept the 30%-40% gross licensing term (among other onerous terms). Mr. Dunican must be permitted to review the agreements with the other rooftops to be able to contextualize the licensing negotiations and assess the veracity of statements that were being made to him by the Cubs during that time. Mr. Dunican must have the financial information underpinning any claim of goodwill as well. Only with such information will Mr. Dunican be able to properly defend himself by knowing of all the evidence in the case when Plaintiff—which has all of the available evidence —tries to convince a jury to disgorge money from Defendants.

## VI.  DEFENDANTS HAVE NOT WAIVED DISCOVERY COMPLIANCE

In the e-mail thread between August 18, 2025 and August 28, 2025, Plaintiff asserted that Defendants had waived their right to compel discovery compliance.  When Plaintiff was asked for the basis of its waiver argument, its counsel responded only that Defendants had allegedly delayed in enforcing their document request number 4.  Exhibit A, p. 1.  Thus, Plaintiff's waiver argument does not apply to Defendants' request to seek relief from Plaintiff's Attorneys' Eyes Only designations or to address the redactions made by Plaintiff from the communications they produced during discovery (nor could Plaintiff properly assert such arguments).

The context for Plaintiff's waiver argument regarding Defendants' document request 4 is provided by the following chronology:

January 27, 2025: Defendants serve their discovery requests;

February 26, 2025: Plaintiff responds to Defendants' document requests, including its refusal to provide documents in response to request 4;

February 26, 2025: Plaintiff responds to Defendants' interrogatories , including its refusal to provide substantive responses to interrogatories 10 and 16-19 which sought information about when and why Plaintiff partially obstructed Defendants' view into Wrigley and who was responsible for the decision to do so;

June 9, 2025: Defendants, represented by new counsel due to their original attorney's serious health issues, send their comprehensive discovery letter;

June 11, 2025: The parties meet and confer regarding the issues raised by the parties. Plaintiff's counsel agrees to confer with Plaintiff regarding these issues.  Plaintiff's counsel does not state when he will provide any additional information or documents;

July 24, 2025: Defendants' counsel sends a follow-up e-mail urging Plaintiff to follow through with its agreement to supplement its discovery responses because of he impending depositions;

July 25, 2025: Plaintiff serves its supplemental interrogatory responses in which it acknowledges for the first time that it acted to block Defendants' view into Wrigley Field;

August 8, 2025: Defendants take the deposition of Jonathan Greifenkamp, Plaintiff's designated corporate representative.  Although the topics list for this deposition included the reasons why Plaintiff partially blocked the view and why it did not completely block the view.  Mr. Greifenkamp was unable to answer these questions;

August 21, 2025: Defendants take the deposition of Mr. Lufrano. Although he was responsible for the modifications to Wrigley Field and addressed the landmark issues for Plaintiff, as noted above he claimed to have little memory of the details of his work; and

August 28, 2025: Plaintiff produces a strategically selected subset of related to the landmark commission.

In addition to Defendants' document request 4, Defendants devoted 5 of their 24 interrogatories to seeking information regarding Plaintiff's attempts to block their view into Wrigley Field. Defendants did not know what, if any, additional documents or information Plaintiff was going to provide until July 25, 2025, less than two weeks before the parties proceeded with depositions. Even so, Defendants continued their efforts to obtain additional documents from Plaintiff by engaging in additional discovery conferences after July 25, 2025, ultimately culminating in Plaintiff finally producing limited documents on August 28, 2025. Plaintiff, however, unilaterally agreed to only to search for and provide "communications with the landmark commission regarding the left-field sign from our existing custodians." Exhibit A, p. 2. Defendants certainly did not consent to Plaintiff cherry-picking a small subset of documents relating to their efforts to block Defendants' view into Wrigley Field.

Critically, Plaintiff has acknowledged, as it must, that Plaintiff was aware Defendants were persistently pursuing information regarding this issue. In their August 28, 2025 e-mail, Plaintiff's counsel stated: "Plaintiff understood the issue to be resolved *by our amended interrogatory responses and the testimony of a corporate representative on the related topics*." Ex. A (Emphasis added). Again, Plaintiff did not supplement its interrogatory responses until July 25, 2025. Plaintiff's corporate representative, Mr. Greifenkamp, was deposed on August 6, 2025. Although Plaintiff glosses over Mr. Greifenkamp's lack of knowledge regarding the reasons why Plaintiff did not completely block Defendants' view into Wrigley Field, Plaintiff's counsel brought out at Mr. Griefenkamp's deposition that Mr. Lufrano was the person with this knowledge. Plaintiff

16

delayed Mr. Lufrano's deposition until August 21, 2025.

Defendants have not waived compliance with document request 4, which they served on January 27, 2025. They did not serve any new discovery requests after the August 21, 2025 close of discovery. They never gave up seeking the documents and information at issue. They did not do anything else that would have prejudiced Plaintiff. After Plaintiff delayed providing additional information to Defendants until July 25, 2025, and continuing through late August 2025, Defendants continued to engage Plaintiff in discussions to obtain the information to which they are entitled.

The two waiver cases relied on by Plaintiff's counsel in the August 28, 2025 e-mail are inapposite. In *Bierk v. Tango Mobile, LLC,* 2021 WL 1675766 (N.D. Ill. April 28, 2021), the plaintiff sought to take a third deposition of the defendant's representative to ask questions that should have been asked at the representative's earlier depositions. The court held that the plaintiff did not establish the relevance of the proposed additional questioning, particularly because the district court judge had denied the plaintiff's belated attempt to add a counterclaim, thus making the relevance of the information sought by the plaintiff even more tenuous. Citing case law that noted, "[t]here has been enough discovery in this case to choke a horse," the court denied the request for a third corporate representative deposition. *Id.* at *2-3.

Similarly, in *Packman v. Chicago Tribune Co.,* 267 F.3d 628 (7th Cir. 2001), at a status conference on the day discovery closed, the plaintiff's attorney advised the court that the defendant's corporate representative was not properly prepared for her deposition. The court instructed plaintiff's counsel to attempt to work out this issue and if necessary to "file a prompt motion." *Id.* at 635-36. The court also set a one-month deadline for the defendants to file a motion for summary judgment. The plaintiff did not file her motion to compel until two days after

defendants filed their motion. The district court denied the motion to compel because it was untimely, sought irrelevant information and that no other witness could provide more detailed information than defendants' corporate representative. *Id.* at 636.

The *Packman* court found that the district court did not abuse its discretion. In so finding, the court relied on the plaintiff's failure to heed the district court's warning that she should not "tarry" in filing her motion to compel. The court further found that two of the three corporate representative deposition topics were not relevant and that as to the third topic the plaintiff "merely did not receive the answers or information she had hoped for…" *Id.* at 647. Thus, as with the *Bierk* decision, the court considered the merits of the plaintiff's motion to compel, thereby rendering the court's timeliness findings *obiter dicta*.

A more analogous case is *Blanchard v. EdgeMark Financial Corp.,* 192 F.R.D. 233 (N.D. Ill. 2000). There, the plaintiff filed motions to compel a month after the close of discovery. During the month delay, the plaintiff's attorney "worked diligently to complete an aggressive discovery schedule, including the taking of final depositions, briefed and argued their motion to amend the class period, attempted 12(K) conferences, and drafted the present motions." *Id.* at 236. Based on these facts and citing case law that allowed a motion to compel filed two weeks after the close of discovery, the court allowed the motions to compel to proceed. *Id.*

In *In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 331 (N.D. Ill. 2005), the court [the same Magistrate Judge who decided the *Packman* decision cited by Plaintiff] relied on the *Blanchard* decision for the proposition that "motions made after the close of discovery are not inevitably out-of-bounds". *Id.* fn. 1. The court found that the delay in bringing part of a motion to compel due to a "tactical decision" would not be excused, while another portion of the motion would be considered because "[w]here a party has contributed to a plaintiff's confusion or has

caused delays in discovery it can hardly be heard to complain about continued discovery." *Id.* at 342.

Here, Defendants contributed to the delay in discovery between February 2025 and May 2025 while their original attorney dealt with his serious health issues. The later delays were caused by Plaintiff. After receiving a detailed discovery letter from Defendants' new counsel in June 2025, Plaintiff did nothing until July 25, 2025, other than to promise it would review the discovery issues raised by Defendants. On July 25, 2025, Plaintiff supplemented its interrogatory responses to remedy some of its discovery shortcomings and began the production of over 80% of its document production, which continued up to, during, and after the completion of depositions, including Plaintiff's August 28, 2025 e-mail in which it finally agreed to provide a selected portion of the documents requested in Defendants' document request 4. On August 28, 2025, Plaintiff produced a few pages, one of which was fully redacted, but those only relate to one email string. Exhibit G, CUBS_01741-1745. This new production revealed that ██████████████████ ███████████████████████████████████████████████████████████████████ ████████████ (a document that is patently relevant and responsive to this litigation and Defendant's discovery requests). See Exhibit G CUBS_01742.

Plaintiff, not Defendants, requested and obtained an extension of the fact witness deposition completion date to August 21, 2025.At the same time, Plaintiff's counsel refused to delay the other depositions for one week, until August 18, 2025, to accommodate Defendants' lead counsel's scheduled college visits and interviews with his son. When Plaintiff's counsel refused the extension requested by Defendants that would have allowed for the completion of all other depositions prior to Mr. Lufrano's deposition, Defendants had an additional attorney appear to depose Plaintiff's witnesses and present Defendants' witnesses for depositions in accordance with

the Court's August 11, 2025 deadline.  Under these circumstances, Defendants respectfully request that the Court consider the merits of their request to compel full compliance with document request 4, the only issue Plaintiffs claim was waived.

## VII.    Conclusion

Defendants request that the Court order Plaintiffs to supplement their discovery responses, overrule Plaintiff's excessive redactions, remove the "Attorneys Eyes Only" designations in favor of a "confidential" designations, and for the entry of any further relief which is just.

Dated: September 2, 2025          Respectfully submitted,

*/s/Matthew De Preter*
Matthew De Preter
Gary P. Hollander
ARONBERG GOLDGEHN DAVIS & GARMISA
225 W. Washington St. Suite 2800
Chicago, IL 60606
P: 312-828-9600
cdepter@agdglaw.com
ghollander@agdglaw.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 2, 2025 a true and correct copies of the foregoing was filed electronically with the Clerk of the Court through the Court's CM/ECF System, which will provide electronic notification of such filing to all attorneys of record.


<u>/s/ Matthew De Preter</u>
Matthew De Preter
One of the Attorneys for Defendants