## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CHICAGO CUBS BASEBALL CLUB, LLC

      Plaintiff,

    v.

AIDAN DUNICAN, an individual; AND
ROOFTOP BY THE FIREHOUSE, INC. D/B/A
WRIGLEY VIEW ROOFTOP

      Defendants.

No. 24-cv-05086

District Judge Johnson
Coleman

Magistrate Judge McShain

### ORDER

Before the Court is defendants' motion to compel responses to certain written discovery requests, to compel certain redactions from written discovery, and for the Court to order a reclassification of certain documents produced by plaintiff from "Highly Confidential – Attorneys' Eyes Only" to "Confidential Information". [80].[1] The motion is fully briefed [84; 109]. For the following reasons, the motion is granted in part and denied in part

### Background

Plaintiff owns and operates both the Chicago Cubs, a major league baseball team, and Wrigley Field, where the Cubs play their games. *Chicago Cubs Baseball Club, LLC v. Dunican*, No. 24-CV-05086, 2025 WL 43256, at *1 (N.D. Ill. Jan. 7, 2025). As part of its business, plaintiff sells tickets to Cubs baseball games and other live events at Wrigley Field. *Id.*

Defendants operate a facility which includes a rooftop bar that can provide guests with a view of Wrigley Field. *Id.* Defendants sell tickets that allow patrons access to the rooftop bar while baseball games and other live events are taking place at Wrigley Field. *Id.* From 2004 until 2023, the parties had an agreement which

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The Court's resolution of the pending motion has required the Court to review and discuss multiple sealed filings, but the Court has attempted to avoid unnecessary discussion of the parties' proprietary business information. To the extent the Court has discussed such material, however, the Court has done so because it is necessary to explain the path of its reasoning. *See In re Specht*, 622 F.3d 697, 701 (7th Cir. 2010); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 568 (7th Cir. 2000).

allowed defendants, in exchange for paying a royalty fee, limited use of plaintiff's intellectual property and the ability to sell tickets to view live events at Wrigley Field from defendants' rooftop. *Id*. After the agreement expired, defendants allegedly continued to sell tickets to view live events at Wrigley Field while utilizing the plaintiff's intellectual property. *Id*. Plaintiff filed this lawsuit in June of 2024 alleging federal and state law violations for Defendants' unauthorized use of Plaintiff's trademarks. *Id.;* [1].

During discovery, for good cause shown, this Court granted the parties' joint motion for an agreed confidentiality order, [50], as well as their joint motion to amend the confidentiality order, [74]. The amended confidentiality order entered by the Court includes a potential designation of "Highly Confidential – Attorney's Eyes Only" ("AEO"). [75] 2–3. Documents and information designated as AEO cannot be viewed by the receiving party, only by the receiving party's counsel and other limited categories of individuals. [*Id.*] at 6–7.

Documents and information can only be designated as AEO when the producing party believes the information to be so highly sensitive that:

> (i) it is the subject of reasonable efforts to maintain its secrecy; (ii) it is sufficiently valuable and secret to afford a potential or actual advantage over others; and/or (iii) its disclosure to existing or potential competitors or customers would cause injury to the business, commercial, competitive, or financial interests of the producing party.

[75] 2. The confidentiality order lists examples of the types of documents that might qualify for an AEO designation, including "margin, cost, and pricing information[.]" [75] 2.

Fact discovery in this litigation closed on 08/11/2025. [62]. However, after receiving a joint status report which this Court construed as a joint motion to extend fact discovery, fact discovery was extended to 08/21/2025 for the limited purpose of completing the deposition of Michael Lufrano. [77]. This motion to compel was filed on 09/02/2025 and concerns several issues that arose during discovery. [80]. Defendants move to compel plaintiff to: (1) comply with defendants' request for production of documents number 4; (2) remove certain redactions on emails produced in discovery after an *in camera* review conducted by the Court; and (3) to reclassify certain documents produced in discovery from "Highly Confidential – Attorneys Eyes Only" to "Confidential Information." [84] 5, 12; [75].

## Legal Standards

### A. Motions to compel

"In ruling on a motion to compel, the discovery standard set forth in Rule 26(b) applies." *Mendez v. City of Chicago*, 18-cv-6313, 2020 WL 4736399, at \*3 (N.D. Ill. Aug. 14, 2020). "Federal Rule of Civil Procedure 26 governs the scope of civil discovery and allows parties to obtain discovery regarding any matter that is: (1) nonprivileged; (2) relevant to any party's claim or defense; and (3) proportional to the needs of the case." *Barnes-Staples v. Murphy*, Case No. 20-cv-3627, 2021 WL 1426875, at \*2 (N.D. Ill. Apr. 15, 2021); *see also* Fed. R. Civ. P. 26(b)(1). "[T]he resolution of discovery disputes is committed to the Court's extremely broad discretion." *Chicago Reg'l Council of Carpenters Pension Fund v. Celtic Floor Covering, Inc.*, 316 F. Supp. 3d 1044, 1046 (N.D. Ill. 2018); *see also Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016) ("[d]istrict judges have broad discretion over discovery matters, so we review discovery rulings deferentially[.]").

Motions to compel filed after the close of discovery are generally deemed untimely. *Friedman v. Wolfspeed, Inc.*, No. 22 C 2253, 2023 WL 4106066, at \*2–3 (N.D. Ill. June 21, 2023). However, when "the motion is accompanied by a reasonable and persuasive justification for its untimeliness, an extended delay may be excused." *Fast Food Gourmet, Inc. v. Little Lady Foods, Inc.*, No. 05 C6022, 2007 WL 1673563, at \*3 (N.D. Ill. June 8, 2007); *see also Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 542 (7th Cir. 2000) (district court properly denied a discovery motion filed two months after the close of discovery because plaintiffs gave "no excuse for their tardiness[.]").

### B. *In camera* review

Deciding whether to conduct an *in camera* review of challenged privilege designations lies within a court's discretion. *Washtenaw Cnty. Employees' Ret. Sys. v. Walgreen Co.*, No. 15 C 3187, 2020 WL 3977944, at \*1, 3 (N.D. Ill. July 14, 2020). The party requesting an *in camera* review must "establish a well-founded basis for challenging . . . [the] privilege designations[.]" *Crabtree v. Experian Info. Sols., Inc.*, No. 1:16-CV-10706, 2017 WL 4740662, at \*3 (N.D. Ill. Oct. 20, 2017). A court should not "engage in an *in camera* review of even a manageable number of documents if the review is not warranted." *Washtenaw Cnty. Employees' Ret. Sys.*, 2020 WL 3977944, at \*3.

### C. Confidentiality Classifications

Under Federal Rule of Civil Procedure 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . commercial information not be revealed or be revealed only in a specified way[.]" Fed. R. Civ. P. 26(c)(1)(G).

One designation that can be found in court ordered confidentiality orders is "attorneys' eyes only." *See e.g.*, *Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *1 (N.D. Ill. June 1, 2010). While AEO designations may be necessary in some circumstances, they are an extraordinarily restrictive limitation that can significantly disadvantage the non-designating party. *Id*. at 5. As Judge Kim explained:

> The AEO designation must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious.

*Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015).

When a confidentiality designation is challenged, the designating party has the burden of justifying the need for the enforcement of the confidentiality order. [75] 9; *see e.g.*, *Motorola, Inc.*, 2010 WL 2179170, at *4. To meet its burden, a party must show that disclosure beyond the limits of the currently applied confidentiality designation will result in a "clearly defined and serious injury, by pointing to specific demonstrations of fact." *Id.* at *3 (citation modified). Conclusory statements about potential harms are not sufficient. *Id.* "To justify the AEO designation, the designating party must do more than show that it is a competitor of the receiving party or that the documents in question disclose information about the designating party's relationships with other competitors." *Glob. Material Techs., Inc.*, 133 F. Supp. 3d at 1084.

## Analysis

### A. Defendants' motion to compel a response to their request for production of documents number 4

Defendants have moved to compel plaintiff to produce documents responsive to request number 4 ("Req. 4") included in defendants' first request for a production of documents. [84] 9–10. Plaintiff makes two arguments in opposition. First, plaintiff objects to this portion of defendants' motion to compel as untimely. [109] 14. Second, plaintiff argues that, even if the motion to compel were timely, Req. 4 does not satisfy Rule 26's relevance and proportionality requirements. *Id.*; *see also* Fed. R. Civ. P. 26(b)(1).

To determine if defendants have a "reasonable and persuasive justification for [their motion's] . . . untimeliness[,]" *Fast Food Gourmet, Inc.*, 2007 WL 1673563, at

*3, it is necessary to discuss the timeline related to defendants' attempts to gain the information sought by Req. 4, namely plaintiff's efforts to block defendants' views of Wrigley Field.

On 01/27/2025, defendants served their first request for a production of documents to plaintiff. [81-4] 2. Req. 4 sought:

> All Documents and Communications concerning each effort by the Cubs to block the views of rooftop businesses, including Wrigley View's, at any time during the terms of the January 27, 2004 agreement between the parties and up to the present.

[81-4] 7. The relevant time period for Req. 4 was subsequently reduced to 2023 through the present. [91-9] 6.

On 02/26/2025, plaintiff served its responses, objecting to Req. 4 on several grounds and responding that plaintiff "will not produce documents for this Request." [81-4] 8. Even after exchanging correspondence and holding meet-and-confers, plaintiff never agreed to produce documents pursuant to Req. 4. [109] 10–11. However, plaintiff did agree to supplement several related interrogatory responses. [*Id.*] at 9–10. Plaintiff served these supplements on 07/25/2025. [*Id.*]. These supplementary responses explained that plaintiff installed "a sign with a screen in the left field bleachers for reasons that included displaying signage and attempting to curtail [d]efendants' misappropriation of the Cubs' property, while avoiding enclosing the left field bleachers or limiting the views from the neighboring rooftop business, which an affiliate of the Cubs own." [91-13] 10, 14, 15–16.

Defendants also attempted to gain relevant information via Federal Rule of Civil Procedure 30(b)(6) depositions. Defendants' deposition notices included the following topics:

> 17. The reasons You had structures, extensions or other materials added to Wrigley Field that partially obstructed the view into Wrigley Field from Defendants' place of business, and particularly the structures at Wrigley Field visible in RBTFH000428-430.
> . . .
> 18. The reasons You did not have structures, extensions or other materials added to Wrigley Field that fully obstruct the view into Wrigley Field from Defendants' place of business.

[91-19] 14. The depositions which included these noticed topics took place on 08/08/2025 and 08/21/2025. [84] 19–20.

Defendants claimed in the hearing that any motion to compel filed earlier than their 09/02/2025 filing would have been incomplete because defendants did not know

what relevant information they would be receiving via other discovery responses. [115] 30:6–19. The Court disagrees.

Plaintiff provided its supplementary interrogatory responses over two weeks before the close of discovery. That left defendants plenty of time to file this motion to compel before discovery closed. Defendants made a strategic decision to attempt to obtain the information they needed from the pending depositions, and it is not an issue for this Court to determine whether it was or was not reasonable for defendants to expect to receive information equivalent to a fulsome response to Req. 4 from depositions alone. By failing to file their motion to compel regarding Req. 4 before the close of discovery, or within a reasonable time thereafter, defendants committed themselves to attempting to obtain the necessary information through remaining deposition testimony, which was the only form of fact discovery allowed after the Court's 08/14/2025 order. [77].

If defendants had received complete answers to their noticed deposition topics, the Court would hold the entire portion of this motion seeking to compel a response to Req. 4 untimely. However, based on the record before the Court, it does not appear that defendants received complete answers to their relevant noticed deposition topics. Defendants had two noticed topics regarding the reason why their rooftop view of Wrigley Field was only partially, rather than fully obstructed. [91-19] 14. The Court's review of the excerpted deposition transcripts indicates that defendants' questions regarding plaintiff's use of a semi-transparent, rather than fully opaque, screen by plaintiff were never fully answered.

In the 08/08/2025 deposition, defendants asked why the plaintiff did not erect a screen that "completely blocked the view" of defendants' rooftop bar. [81-2] 140:18–20. Plaintiff's Rule 30(b)(6) witness testified that "I suppose we could have[,]" [*Id.*] at 140:21, but that he ultimately did not know why they chose not to, [*Id.*] at 141:4–6. In the 08/21/2025 deposition, defendants asked the question again. [91-3] 106:5–10. Plaintiff's witness testified that, while discussions with the Landmark Commission regarding signage made it clear that a solid billboard was not allowed, the witness "d[id] [not] know if that had anything to do with why the screens were [not][sic] opaque." [*Id.*] at 106:11–19. The Court also notes that the reasons for the use of a semi-transparent screen is not answered in plaintiff's supplementary interrogatory responses. [91-13] 10, 14, 15–16.

In summary, defendants dutifully attempted, through depositions and other forms of discovery, to obtain information regarding plaintiff's attempts to block defendants' view by installation of a semi-transparent, rather than fully opaque, screen. Defendants ultimately opted to pursue this information through deposition testimony. However, despite the clear deposition topics and the fact that defendants asked nearly the same question regarding the screen at both Rule 30(b)(6) depositions, plaintiff's witnesses were unable to answer. Less than two weeks passed

between the final deposition and defendants' motion to compel.[2] As such, in so far as Req. 4 seeks information regarding plaintiff's efforts to block defendants' views with screens, the Court finds defendants' delay in filing the motion reasonable and persuasive.

Plaintiff posits three arguments to support its claim that, even if the motion to compel were timely, Req. 4 is not relevant or proportional in accordance with Rule 26(b)(1). First, plaintiff claims that defendants already possess all relevant information regarding Req. 4. [109] at 16–18. As discussed above, the Court finds that defendants have some, but not all, of the relevant information they sought through depositions and interrogatories. Plaintiff failed to fully respond to some relevant deposition questions, regarding screens, that could also be obtained from a response to Req. 4.

Second, plaintiff claims that Req. 4 is facially overbroad because "[t]he only information that could possibly bear on that issue [specifically, plaintiff's failure to mitigate damages] includes when, how, and to what extent the Cubs blocked [d]efendants' view." [*Id.*] at 16. The Court agrees that the portion of Req. 4. that is relevant to the issue of mitigation of damages is limited to defendants' view. As the Court's decision regarding the timeliness of defendants' motion to compel already limits Req. 4 to only attempts to block *defendants'* rooftop views, the Court finds both the relevancy and overbroad objections moot.

Finally, the plaintiff also claims that Req. 4 is not proportionate to the needs of the case, would be unduly burdensome, and would delay the litigation. [*Id.*] at 18. However, plaintiff does not provide any facts regarding the burden to comply with Req. 4 to justify these claims. Further, Req. 4 is now substantially limited based on the Court's decision regarding the timeliness of defendants' motion. As such, the Court does not find that Req. 4 should be denied on these grounds.

For the reasons stated above, the Court grants defendants' motion to compel a response to Req. 4, but limited to attempts by the Cubs to: (1) block defendants' rooftop view; (2) using screens.[3] To the extent that the request seeks documents regarding attempts by the Cubs to block the views of other rooftops or attempts to block defendants' views with structures other than screens, the Court denies the motion to compel as untimely.

---

[2] The Court notes that defendants' motion was filed with only the "rough draft" of the transcript attached. [81-5]. This is further evidence of defendants attempting to quickly file this motion to compel after analyzing the deposition testimony.

[3] Defendants have already agreed to limit Req. 4's relevant time period to 2023 through the present. [91-9] 6. The Court's decision incorporates this already agreed-upon limitation.

## B. Defendants' request for an *in camera* review regarding plaintiff's email redactions

Defendants move for the Court to conduct an *in camera* review and, if appropriate, compel plaintiff to produce unredacted versions of certain emails. [84] 12. Defendants claim that several of the emails redacted as protected under attorney-client privilege or the work product doctrine appear to actually have been created in the ordinary course of business, are not primarily legal in nature, and thus not protected by either doctrine. [*Id.*] at 13–17.

Plaintiff objects to this request for several reasons, but namely that it is untimely. [109] 18. Plaintiff delivered their initial privilege log on 06/20/2025 and a revised log on 06/27/2025. [91-17] 2; [81-9] 2. At defendants' request, plaintiff re-reviewed their privilege determinations and removed some redactions on 08/20/2025. [109] 12.

In the hearing, defendants stated that this request could not have been made before the 08/21/2025 deposition of Mr. Lufrano. [117] 22:17–25. Mr. Lufrano is included in many of the emails at issue. [81-7; 81-8]. Defendants claim that they would not have been able to fully brief this portion of the motion until obtaining evidence that Mr. Lufrano, at times, is not acting as an attorney for the plaintiff when sending these email communications. [117] 22:17–25.

The Court does not find the reasons provided by defendants for their delay reasonable or persuasive. The case law–cited in defendants' brief–is clear that an attorney's presence in the communications does not automatically shield those communications from discovery under either attorney-client privilege or the work product doctrine. *See e.g.*, *Burden–Meeks v. Welch*, 319 F.3d 897, 899 (7th Cir.2003); *BankDirect Cap. Fin., LLC v. Cap. Premium Fin., Inc.*, 326 F.R.D. 176, 181 (N.D. Ill. 2018); *Heriot v. Byrne*, 257 F.R.D. 645, 663 (N.D.Ill.2009); [84] 13–14. Further, as defendants correctly state, the initial burden of persuasion is borne by the party claiming the privilege, not the objecting party. *Acosta v. Target Corp.*, 281 F.R.D. 314, 321 (N.D. Ill. 2012); *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 163 (N.D. Ill. 2017); [84] 14. Defendants had no need to use Mr. Lufrano's deposition to develop facts before moving to remove plaintiff's redactions.

Moreover, even if the Court were to reach this issue, it would deny the motion. Federal Rule of Civil Procedure 26 provides that a party withholding information otherwise discoverable on privilege grounds must "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A); *see also* 6 James Wm. Moore et al., Moore's Federal Practice § 26.47[1][b] (3d ed. 2021) ("Generally, a privilege log is adequate if it identifies with

particularity the documents withheld, including their date of creation; author, title or caption; addressee and each recipient; and the general nature or purpose for creation."). After a review of plaintiff's privilege log and associated redactions, the Court finds that plaintiff has complied with Rule 26.

For this Court to conduct an *in camera* review, defendants must establish a well-founded basis for challenging the plaintiff's privilege designations. *Washtenaw Cnty. Employees' Ret. Sys.*, 2020 WL 3977944, at *1. "[L]egal advice about a business decision" is privileged, and mere "speculation as to the amount of legal advice in certain 'business communications'" is not a basis for *in camera* review. *Crabtree.*, 2017 WL 4740662, at *2. "The emails need only reveal, directly or indirectly, the substance of a confidential attorney-client communication." *Wier v. United Airlines, Inc.*, No. 19 CV 7000, 2021 WL 1517975, at *6 (N.D. Ill. Apr. 16, 2021) (citation modified). The Court finds that none of defendants' claims establish the well-founded basis necessary for an *in camera* review.

For the reasons stated above, the Court, in its discretion, denies defendants' motion to the extent that it seeks an *in camera* review and subsequent removal of redactions from plaintiff's email production.

## C. Defendants' request for the reclassification of certain documents' confidentiality designations

Defendants move for the Court to downgrade two categories of documents from the "Highly Confidential – Attorney's Eyes Only" designation to the lesser "Confidential Information" tier. [109] 22; [84] 5, 17–18; [75]. The first category of documents consists of plaintiff's agreements with the other affiliated and independent rooftop businesses. [109] 22; [84] 5, 17–18. The second category of documents contains plaintiff's financial information. [109] 22; [84] 5, 17–18. Defendants argue that plaintiff's designations "deny Mr. Dunican the fundamental right to participate in and understand the merits of this case and the claims brought against him personally[.]" [84] 17.

In an attempt to satisfy its burden of justifying the need for the AEO classification, *Hitz Ent. Corp. v. Mosley*, No. 16 C 1199, 2017 WL 444073, at *7 (N.D. Ill. Feb. 1, 2017), plaintiff raises the possible competitive harm that could arise from defendants' knowledge of the information contained in the documents. Plaintiff argues that the parties are direct competitors. [109] 6–7. Not only do the parties both sell tickets to view events occurring at Wrigley Field, but plaintiff also owns and operates other rooftop businesses with views of Wrigley Field. [*Id.*] 22–23. As a direct competitor, plaintiff argues that access to "information about the Cubs' costs, margins, and pricing strategy, as well as the royalty rates (and therefore costs and margins)" could provide a competitive advantage to defendants. [*Id.*] 23, 25. Plaintiff offered no declaration explaining exactly what information was included in the

challenged documents nor in support of its opposition brief's arguments regarding competitive harm.

Defendants argued during the hearing that, because of the relative position of the parties, plaintiff's contention that defendants could gain a competitive advantage from the challenged documents is false. [115] 11:22–24. The first category of documents, plaintiff's agreements with other rooftop businesses, would reveal the royalty rate and terms that plaintiff agreed to with other businesses that do compete with defendants. [109] 7. But defendants claim that because the royalty rates are paid by the rooftop bars to allow them to sell views of events at Wrigley Field, there is only a "market of one." [115] 11:11–21. Defendants could ask plaintiff for better terms after seeing the royalty rates charged to other rooftops, but the plaintiff has no obligation to agree to those terms. [115] 16:23–17:3. And it is not as if defendants could not respond to plaintiff's refusal of a lower royalty rate by finding a different supplier of ballpark views who is willing to undercut plaintiff. While the second category of documents would reveal financial information regarding the Cubs baseball club, defendants do not run a baseball club or stadium and are not able to use the data to gain a competitive advantage over the plaintiff.

The Court agrees with defendants. Plaintiff's conclusory statements, unsupported by any record evidence, regarding how defendants may be able to utilize the information outside of the litigation are insufficient to demonstrate the type of clearly defined and serious injury necessary to maintain the extraordinarily restrictive AEO limitation. *Motorola, Inc.*, 2010 WL 2179170, at *4. Because the Court is reclassifying the documents as "Confidential Information" in accordance with the amended confidentiality order, defendants will still be barred from sharing the information outside of this litigation. [75] 5. During the hearing, plaintiff confirmed that its argument against reclassification "is not predicated on the notion that Mr. Dunican would share this information in contravention of the obligations of the confidentiality order." [115] 20:21-25.

For the reasons stated above, the Court grants defendants' motion to the extent that it seeks to reclassify the following two categories of documents to the "Confidential Information" tier: (1) the plaintiff's agreements with the affiliated and other independent rooftop businesses;[4] and (2) the plaintiff's financial information.

---

[4] This decision is based on the Court's understanding that the AEO information at issue in the agreements between the plaintiff and the rooftop businesses consists solely of the royalty rates and related conditions. The parties did not discuss whether other sensitive competitive information is included in these agreements and subject to the instant motion. If these agreements include the rooftop bars' costs, margins, or pricing strategy–beyond the royalty rates–that information may provide defendants a "potential or actual" advantage over the other rooftop bars. [75] 2. Further, there is no record evidence that defendants are contesting these agreements' AEO designations beyond the royalty rates and related conditions. As such, to the extent that the agreements with rooftop businesses contain information other than the royalty rates and related conditions, that information may continue to be designated as AEO.

## Conclusion

For the foregoing reasons, defendants' motion to compel [80] is denied in part and granted in part. Plaintiffs must respond to Req. 4 to the extent it seeks documents related to attempts by the Cubs to: (1) block defendants' rooftop view; (2) using screens; (3) for the time period of 2023 through the present. The Court, in its discretion, declines to conduct an *in camera* review and order a subsequent removal of redactions from plaintiff's email production. Finally, the Court reclassifies two categories of documents to the "Confidential Information" tier: (1) the plaintiff's agreements with the affiliated and other independent rooftop businesses; and (2) the plaintiff's financial information.

Production in accordance with this order shall be completed by 01/09/2026 absent any extension granted by this Court.

HEATHER K. McSHAIN
United States Magistrate Judge


**DATE: December 22, 2025**