UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| | ) | |
| CHICAGO CUBS BASEBALL CLUB, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 24-cv-05086 |
| v. | ) ) ) | Judge Sharon Johnson Coleman |
| AIDAN DUNICAN and ROOFTOP BY THE FIREHOUSE, INC., | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chicago Cubs Baseball Club, LLC ("Plaintiff") filed suit against Defendants Aidan Dunican ("Dunican") and his business Rooftop by the Firehouse, Inc. d/b/a Wrigley View Rooftop ("Wrigley View Rooftop" and, together with Dunican, "Defendants"), alleging that they engaged in misappropriation, unjust enrichment, and violations of the Lanham Act, 15 U.S.C. §§ 1051, *et seq.* Plaintiff alleges that Defendants profited from their rooftop view of the Chicago Cubs baseball games. Before the Court is Defendants' Motion for Judgment on the Pleadings on Plaintiff's counts of misappropriation and unjust enrichment [58]. For the reasons set forth below, the Motion for Judgment on the Pleadings is denied.

**BACKGROUND**

Plaintiff is a Delaware Corporation which owns and manages the Chicago Cubs, a Major League Baseball team, as well as Wrigley Field, the ballpark in which the Cubs play their home games. As managers of Wrigley Field, Plaintiff is responsible for production of live baseball games and the ballpark's operations and facilities. Plaintiff spends more than a hundred million dollars annually compensating players and staff, operating and maintaining the ballpark. It spends hundreds of millions more in restoration and improvements to the historic Wrigley Field. To recoup their

1

investment, Plaintiff sells individual and group tickets to the Cubs' home baseball games, concessions, memorabilia, and merchandise. Plaintiff also enters licensing agreements with neighboring businesses, selling licenses to businesses for use Plaintiff's live games.

Across the street from Wrigley Field is a rooftop operated by Defendant Wrigley View Rooftop, an Illinois Corporation. Wrigley View Rooftop was founded by Defendant Dunican, who serves as its president, secretary, and director. Defendants' facility accommodates up to 200 guests. Guests can purchase individual tickets and group event packages to access Defendants' facility. Defendants describe their facility as including a skydeck that provides a "birds-eye view of the ballpark"; bleachers that seat 85 and "offer breathtaking views of historic Wrigley Field and the iconic scoreboard"; a clubhouse with "multiple plasma TVs" and "a balcony overlooking the ballpark"; and a mezzanine with "plenty of plasma TVs to watch the game." Defendants do not subsidize nor contribute to the direct costs required to "produce" Cubs games, such as the costs of electricity and technology, utilities, sanitation, marketing, equipment, *et cetera*.

Prior to 2024, Defendants held a license from Plaintiff permitting them to sell tickets to access their rooftop bleachers overlooking the ballpark. But in 2024, Plaintiff informed Defendants that they could no longer sell tickets to view Cubs games for the 2024 Major League Baseball season. Nevertheless, Defendants listed the Cubs' schedule on its website and sold tickets to access their rooftop. On several dates, Defendants even sold out all available space on their rooftop. As a result, Defendants earn revenue through their view of Cubs games that would otherwise flow to Plaintiff.

Plaintiff brought this action asserting that Defendants misappropriate its property right to the Cubs' live games by selling tickets to view those games from their rooftop. Plaintiff further alleges that such sales, along with collateral sales of food, drink, and other concessions, unjustly enrich Defendants. Defendants argue that Plaintiff does not possess a right to provide the experience of a live Cubs game. In asserting their own right to conduct their business on their rooftop, Defendants

2

claim their right to enjoy the benefits of the sights around its rooftop supersedes any claim Plaintiff may possess. Further, Defendants assert that even if Plaintiff did possess a property right in the experience of its live games, Plaintiff failed to protect its property. Lastly, the Defendants raise several affirmative defenses, including that Plaintiff was not damaged and possessed unclean hands.

**LEGAL STANDARD**

After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The "pleadings" include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998). The "only difference between a motion for judgment on the pleadings and a motion to dismiss is timing; the standard is the same." *Federated Mutual Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020).

To survive a motion for judgment on the pleadings, a complaint must state a facially plausible claim. *Bishop v. Air Line Pilots Assoc., Int'l*, 900 F.3d 388, 397 (7th Cir. 2018) (citation omitted). When determining if a complaint states a plausible claim for relief, courts accept the plaintiff's "factual allegations as true and draw reasonable inferences … in [plaintiff's] favor." *Taylor v. JPMorgan Chase Bank*, 958 F.3d 556, 562 (7th Cir. 2020). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court will grant Defendants' Rule 12(c) motion only if Defendant demonstrates "beyond a doubt" from the pleadings that "the plaintiff cannot prove any facts to support a claim for relief and

the moving party demonstrates that there are no material issues of fact to be resolved." *Moss v. Martin*, 473 F.3d 694, 698 (7th Cir. 2007); *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993).

**DISCUSSION**

    **I.**       **Sufficiency of Plaintiff's Complaint**

        *a.*  *Misappropriation*

In Count I, Plaintiff alleges that Defendants misappropriate its property, namely the experience of live games and events at Wrigley Field. Defendants argue that Plaintiff has not stated such a claim because it does not possess property rights to its live games and because Defendants are entitled to enjoy and profit from their property and view of the neighborhood.

To substantiate its claim of misappropriation, Plaintiff must show that (1) it "created a product through extensive time, labor, skill or money," (2) Defendants "used [its] product in competition with [Plaintiff], gaining a special advantage … because [Defendants] bore little or no burden of the expense of development," and (3) Defendants' use of Plaintiff's product caused commercial damage to the plaintiff." *McNabb Bennett & Assocs., Inc. v. Terp Meyers Architects,* 1987 WL 7817, at *6 (N.D. Ill. Mar. 10, 1987) (Williams, J.).

Defendants first argue that Plaintiff does not have a property interest in its alleged "product," the live Cubs games it produces at Wrigley Field. The leading precedent on this issue is *Pittsburgh Athletic Co. v. KQV Broad. Co.*. In that case, the defendant operated a radio station from which it broadcasted play-by-play descriptions of baseball games played by the Pittsburgh Pirates. The defendant was able to broadcast the real-time updates from the Pirates' games by positioning observers outside the ballpark where they "[could] see over the [park's] enclosures." 24 F. Supp. 490, 492 (W.D. Pa. 1938). The court found that the plaintiffs had a "right, title and interest in and to the baseball games played within the parks," and agreed that the defendant's conduct was "a violation of the property rights of the plaintiffs." *Id.* at 493–94. Since *Pittsburgh Athletic Co.*, courts have affirmed

the holding that sports teams have a property right in profits from their live games. *See Right Field Rooftops, LLC v. Chicago Baseball Holdings, LLC,* 87 F. Supp. 3d 874, 888 (N.D. Ill. 2015) (Kendall, J.) ("Cubs are not limited [to] … how they distribute their own product, in this case, live Cubs games."); *In re Nat'l Football League's Sunday Ticket Antitrust Litig.,* 933 F.3d 1136, 1144 (9th Cir. 2019).

Accepting Plaintiff's facts as true, the Complaint adequately states a claim of misappropriation. Plaintiff alleges that it "sell[s] the experience of viewing live Cubs baseball as it happens" and that it incurs costs approaching a billion dollars to produce Cubs games and events at Wrigley Field. (Dkt. 1) ¶¶ 14, 40. Plaintiff further alleges that Defendants previously possessed a license to sell tickets to view Cubs games and events at Wrigley Field from their rooftop, but that license has not been renewed. (Dkt. 1) ¶¶ 2, 41. In fact, Plaintiff expressly put Defendants on notice that they had no right to sell tickets to view the Cubs' games. (Dkt. 1) ¶ 24. Plaintiff further alleges that Defendants continue to advertise and sell tickets to view the Cubs' games to the public, despite not contributing to the costs of hosting the games and managing the ballpark. (Dkt. 1) ¶¶ 26–27, 42. While Defendants may be entitled to enjoy the views around their own property, Plaintiff's allegations indicate that Defendants profit off of Plaintiff's "product" for their own commercial benefit. For instance, the Complaint states that Defendants sell tickets only when there is a game or event taking place at Wrigley Field. (Dkt. 1) ¶ 27. Defendants also allegedly provide customers a refund in the event the rooftop's line of sight into Wrigley Field is affected. (Dkt. 1) ¶ 25. It is reasonable to infer from these facts that much of Defendants' profit comes from the "experience" of watching live games from their rooftop.

As a result of Defendants' practices, Plaintiff alleges economic injury in the form of lost revenue. Cubs fans may purchase tickets to Defendants' rooftop to watch baseball games, rather than purchasing tickets for admission into Wrigley Field. (Dkt. 1) ¶ 34. This causes Plaintiff to miss out on revenue from ticket sales, concessions, and merchandise. (Dkt. 1) ¶ 35. Therefore, Plaintiff alleges that Defendants receive a commercial benefit from selling tickets to experience the live games Plaintiff

5

produces—a commercial benefit that would have otherwise gone to Plaintiff. Defendants profit from Plaintiff's effort and expenditures, all at no cost to themselves in providing the experience of a live game. Plaintiff's allegations that Defendant uses Plaintiff's own product to compete against it, all while receiving a "free ride," are sufficient to demonstrate commercial damage caused by that use.

Having plausibly alleged a claim of misappropriation, Count I of Plaintiff's Complaint meets the Rule 12(b)(6) standard.

> b. *Unjust Enrichment*

In Count II, Plaintiff alleges that Defendants are unjustly enriched by the misappropriation of its live-game experience. Defendants again argue that they are entitled to the enjoyment of their own property and to the benefits thereof.

To state a claim for unjust enrichment, Plaintiff must establish (1) Defendants have unjustly retained a benefit to Plaintiff's detriment and (2) Defendants' retention of the benefit "violates the fundamental principles of justice, equity, and good conscience." *MetroPCS v. Devor*, 215 F. Supp. 3d 626, 634–35 (N.D. Ill. 2016) (citing *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). Where unjust enrichment claims "rest[] on the same improper conduct alleged in another claim . . . [it] will stand or fall with the related claim." *Cleary v. Philip Morris, Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

The first element for unjust enrichment mirrors the "commercial damage" element of misappropriation. Again, Plaintiff's allegations establish that Defendants make a profit from selling tickets to watch Cubs games from their rooftop, without Plaintiff's permission and without financial contribution. Their profits are derived entirely from Plaintiff's efforts in holding live baseball games. Defendants obtain this pecuniary benefit by diverting revenue from Plaintiff *i.e.*, to Plaintiff's detriment. The unjust enrichment claim "stand[s] … with the related claim" of misappropriation.

Because Plaintiff alleges a plausible claim for unjust enrichment, Count II likewise survives under the Rule 12(b)(6) standard.

### II.      Defendants' Answer

The Answer is part of the pleadings, so the Court may consider facts alleged therein when addressing a Rule 12(c) Motion.  "[W]hen material issues of fact are raised by the answer, a motion pursuant to Rule 12(c) cannot be granted."  *See S.G. v. Rockford Bd. of Educ.*, 2008 WL 5070334, at *5 (N.D. Ill. Nov. 24, 2008) (Kapala, J.) (citing *Supreme Laundry Serv., L.L.C. v. Hartford Cas. Ins. Co.*, 521 F.3d 743, 746 (7th Cir. 2008); *see also e.g., Crudup v. Barton*, 2002 WL 276285, at *4 (N.D. Ill. Feb. 27, 2002) (Gottschall, J.).

Defendants have foreclosed their own success on their Motion.  In their Answer, Defendants deny many of the facts essential to supporting Plaintiff's claims, thereby placing those alleged facts in dispute.  Defendants also assert several factual allegations of their own in their Answer.  *See* (Dkt. 56).  Through including additional facts in their Answer, Defendants introduce more material issues of fact, as Plaintiff is automatically deemed to have denied all allegations in any affirmative defense.  *See* Fed. R. Civ. P. 8(b)(6).

Defendants have not only failed to establish that Plaintiff failed to sufficiently plead its misappropriation and unfair enrichment claims, but have also failed to demonstrate the absence of any dispute of material fact such that Plaintiff's claims cannot succeed. Accordingly, the assertions in Defendants' Answer preclude judgment on the pleadings.

**CONCLUSION**

For these reasons, the Court denies Defendants' Rule 12(c) motion for judgment on the pleadings as to Plaintiff's claims of misappropriation and unjust enrichment [58].

**IT IS SO ORDERED.**

Date: 5/1/2026

Entered: _____

SHARON JOHNSON COLEMAN
United States District Judge